IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Kathy Dyer and Robert Dyer <br> Individually and as <br> Representative of the Estate of <br> Graham Dyer <br><br>   Plaintiffs <br><br> VS. <br><br> City of Mesquite, Texas; Jack Fyall; Richard Houston; Alan Gafford; Zachary Scott; William Heidelburg; Paul Polish; Joe Baker; Bill Hedgpeth <br><br>   Defendants | § § § § § § § § § § § § § § § | Civil Action No. <br><br> _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

  Kathy and Robert Dyer, individually and as representatives of the estate of their son Graham Dyer, claim that Defendants caused Graham's death and violated his rights under the United States Constitution.

### I. JURISDICTION AND VENUE

1. Plaintiffs bring this action under the U.S. Constitution and 42 U.S.C. §1983. Jurisdiction is based on 28 U.S.C. §§1331, 1343(a)(3)-(4).

2. Venue is proper in this Court under 28 U.S.C. §1391(b)(1)-(2) as the county in which all or part of the cause of action arose.

## II. PARTIES

3. At all relevant times, the officer, paramedics jailers acted as agent, servant, and employees of the City under color of law. As such, they were responsible for upholding the laws of the United States and Texas.

4. Defendant Mesquite can be served through Stan Pickett, Mayor and/or the city secretary at 1515 N. Galloway Ave., Mesquite, TX  75149.

5. Defendant Jack Fyall can be served through the Mesquite Police Department at 777 N. Galloway Ave., Mesquite, TX  75149.

6. Defendant Richard Houston can be served through the Mesquite Police Department at 777 N. Galloway Ave., Mesquite, TX  75149.

7. Defendant Alan Gafford can be served through the Mesquite Police Department at 777 N. Galloway Ave., Mesquite, TX  75149.

8. Defendant Zachary Scott can be served through the Mesquite Police Department at 777 N. Galloway Ave., Mesquite, TX  75149.

9. Defendant William Heidelburg can be served through the Mesquite Police Department at 777 N. Galloway Ave., Mesquite, TX  75149.

10. Defendant Bill Hedgpeth can be served through the Mesquite Police Department at 777 N. Galloway Ave., Mesquite, TX  75149.

11. Defendant Paul Polish can be served through the Mesquite Fire Department at 1515 N. Galloway, Mesquite, TX  75149.

12. Defendant Joe Baker can be served through the Mesquite Fire Department at 1515 N. Galloway, Mesquite, TX  75149.

III. STATEMENT OF FACTS

13. This case arises out of the death of Graham Dyer who was in custody at the Mesquite jail at the time of his death in August 2013.

14. Around 9 p.m. on August 13, 2013, Graham Dyer and three other persons took LSD. At the time, Graham was 18 years old, 5' 4" tall and weighed 102 pounds. Graham and the group of young people then began to walk to Sonic in Mesquite. On the way, Graham became agitated and his friends attempted to calm him. They were near Wilkerson Middle School when they saw police arrive and everyone began to run. Graham was unharmed other than minor scratches when police arrived. He was not physically injured and had done nothing to harm himself.

15. One of Graham's friends who initially ran away when the police arrived heard Graham cry out and returned to Graham's location, where he saw Graham on the ground surrounded by Mesquite police. The friend was detained and lost sight of Graham but could hear the sounds of tasers and Graham screaming. The friend was placed under arrest and taken to the Mesquite jail.

16. Officers on the scene deployed at least one taser on Graham before any physical encounter took place. Graham was restrained in handcuffs and placed into a patrol car.

17. During the process of taking Graham into custody, officers summoned paramedics with the Mesquite Fire Department to the scene. Despite the fact that officers contend that Graham had a serious head wound prior to their arrival, the paramedics cleared Graham to be taken to jail with no medical treatment.

18. Graham was placed in both handcuffs and leg restraints in the back of the patrol car. The police allege that during transport, Graham struck his head on various parts of the car, causing himself severe injury. Despite this, instead of taking Graham to the hospital for treatment, the police continued to apply a taser and transported him to the Mesquite jail.

19. After Graham's friend was placed in the Mesquite jail, he heard another person being brought in. He heard that person screaming and vomiting and believed it to be Graham. Graham was placed in a chair restraint that completely restricted his movement.

20. At approximately 1:34 a.m. on August 14, 2013, paramedics were dispatched to the Mesquite jail where Graham was unresponsive. Despite the fact that Graham was completely unresponsive with unreactive pupils, the jail officers refused to unshackle him so that he could receive appropriate medical treatment. Upon transport by ambulance to the hospital, paramedics could not insert an oral airway because Graham was "cinched down" and paramedics could not obtain necessary access.

21. Graham was "admitted" to Baylor emergency room at 2:15 a.m. on August 14, 2013. At that time, Graham was completely unresponsive. The Baylor physician found that the mechanism of injury to Graham was "aggravated assault" and the ER records reflect "Victim of Physical Assault." Graham was pronounced dead from craniocerebral trauma.

22. Despite numerous requests, including formal requests under the Freedom of Information Act, Mesquite has refused to release the 911 call, squad car videos, booking photos, internal documents and any other records relating to this event. The City claims to be unable to locate paramedic records of the initial evaluation at the scene prior to transporting Graham to jail.

IV. CAUSES OF ACTION

**42 U.S.C. § 1983**

23. All allegations contained in paragraphs 9 through 16 above are hereby incorporated into this count of Plaintiff's Petition.

24. Plaintiffs' rights were violated in contravention of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution. Graham died as a direct result of excessive force

and being denied immediate medical attention by Mesquite paramedics and those who held him in custody, and the decisions were objectively unreasonable under the circumstances.

Fourth Amendment

Eighth and Fourteenth Amendments

25. At no time during the events described herein was Graham Dyer able or permitted to tend to his own medical needs. Graham was handled in total disregard for the emergency nature of the situation. Further, reasonable personnel would understand the need for immediate response to the situation and the potential risk for harm if Graham's obvious medical need was willfully and unlawfully ignored.

26. The Defendants' denial of medical attention prior to transport to the jail was in accordance with Defendant Mesquite's policies, procedures, practices and customs relating to treatment of individuals being taken into custody. It was the custom and practice of the City to provide little, if any, medical attention to persons being taken into custody and/or failing to provide emergency transport. The paramedics at the scene prior to transporting Graham Dyer to jail had subjective awareness of a head injury as well as the consequences of failing to provide appropriate medical care and acted in accordance with the custom and practice in Mesquite of failing to provide medical treatment to an individual in similar circumstances and/or failing to transport such an individual to a hospital for emergency medical treatment.

27. The Defendants' denial of immediate medical attention as set out above is in accordance with Defendant's policies, procedures, practices, and customs relating to treatment of persons in custody regarding medical treatment. At all material times, the individual personnel were following the policies, procedures, customs and practices of Defendant Mesquite and were acting under color of law.

28. Defendant Mesquite breached the duty to provide adequate training and supervision to emergency personnel regarding transporting persons in police custody, amounting to deliberate indifference to the rights of individuals not to be subjected to deprivation of their Constitutional rights. Either Defendant Mesquite had a pattern of engaging in such conduct resulting in failing to provide adequate medical care or a deprivation of Constitutional rights was a highly predictable consequence of such failure to train/supervise.

29. During the transport of Graham Dyer to the jail as well as during the booking process and while restrained in a cell, Mesquite officers failed to provide any medical treatment or care whatsoever, in accordance with the policies, customs and practices of the City and in contravention of Graham Dyer's constitutional right to be free from cruel and unusual punishment.

30. Further, Defendant Mesquite breached the duty to provide for the safety of persons committed to its custody, and breached the duty to provide adequate training and/or supervision to personnel regarding health, safety and medical care for persons in custody, amounting to deliberate indifference to the rights of individuals not to be subjected to deprivation of their Constitutional rights. Such inadequate training policies, customs and/or practices were the direct cause of the death of Graham Dyer.

31. The agents and officers of Defendant Mesquite had fair notice and thus knew or should have known that delay in and indifference to a medical emergency situation when an individual is in custody and cannot help himself, would violate the Constitutional and statutory protections afforded to individuals, including Graham Dyer. This law was clearly established at the time the delay and indifference to Graham Dyer's medical emergency occurred.

32.     Defendant Mesquite is liable to Plaintiffs for actual damages and compensatory damages, together with a statutory attorney's fee as authorized by 42 U.S.C. § 1988.

33.     The Defendant knowingly or recklessly endangered the life of Graham Dyer.  All of these actions were done in conscious disregard for the safety and well being of Graham Dyer.

34.     Defendant's deficient customs, policies, procedures and practices as they pertain to providing medical attention when a person in custody is injured/ill amounts to a conscious disregard of and deliberate indifference to inmates' rights not to be subjected to cruel and unusual punishment.  Further, the Defendant's deficient customs and practices are a proximate cause of Graham Dyer's death, caused by denying him, a person in custody, medical treatment in violation of his civil rights.  Defendant's denial of Graham Dyer's civil rights was objectively unreasonable under the circumstances.

35.     Defendant breached its duty to adequately train officers/deputies/guards/personnel regarding the requirement to provide for the health and safety of inmates, which failure amounts to deliberate indifference to the rights of inmates to be free from deprivation of their Constitutional rights.  Such inadequate training policies, customs and/or practices were the direct cause of the death of Graham Dyer.  Either Defendant Mesquite had a pattern of engaging in such conduct resulting in failing to provide adequate medical care or a deprivation of Constitutional rights was a highly predictable consequence of such failure to train/supervise.

36.     Immediately prior to his death, Graham Dyer suffered extreme pain and anguish. Defendant's acts, omissions, policies, procedures and/or customs as set forth above are the proximate cause of substantial damages to Graham Dyer, including severe pain and suffering, both emotional and physical.  The Defendant had fair notice and thus knew or should have known that denying a person in custody immediate medical attention in an emergency situation

is in violation of the Constitutional and statutory protections afforded to Graham Dyer. This law was clearly established at the time of the injury.

37. Defendants' conduct has violated the Fourth, Eighth and Fourteenth amendments to the United States Constitution.

### Individual Defendants—42 U.S.C. § 1983 Claims

38. All allegations contained in paragraphs 9 through 16 above are hereby incorporated into this count of Plaintiff's Petition.

39. Graham Dyer either was or should have been examined at the scene at the middle school by Paul Polish and Joe Baker with the Mesquite Fire Department who responded and arrived at the scene before Graham was transported to the jail. At that time, Graham was in the custody of the police and had sustained a visible and serious head injury. Polish and Baker ignored the obvious and serious injury and provided neither medical treatment nor transport to the hospital. They did not accompany Graham to the jail and provided no further assessment or monitoring.

40. Polish and Baker knew of the substantial risk of serious harm that would result by ignoring obvious symptoms of serious illness. These individual Defendants knew of the substantial risk of serious harm that would come from failing to monitor or treat head trauma. Yet Polish and Baker allowed Graham to be transported with no treatment or monitoring which lead directly to Graham's death as a result of head trauma.

41. The conduct of the individual Defendants in this matter amounted to deliberate indifference. Plaintiffs do not allege a mere failure to provide good medical care. Rather, Polish and Baker were aware of facts demonstrating a substantial risk of serious harm and disregarded the risk by failing to take reasonable measures to treat Graham. They completely ignored his obvious injury, made no effort to determine his symptoms in the hours before he was found

unresponsive and no effort to follow up.  There can be no greater deliberate indifference than to completely ignore the obvious injuries and completely ignore the serious risks associated therewith.  What happened to Graham Dyer under their dismissive care amounted to torture.  He was left to suffer horribly strapped to a chair in a padded cell and then die from his injuries.

42. Defendants Fyall, Gafford, Scott, Heidelburg, Houston and Hedgpeth were officers at the scene at the middle school and used excessive force while taking Graham into custody as well as transporting Graham Dyer to jail instead of the hospital and placing him in restraints in a cell when he was in critical condition and in need of immediate medical care.

43. Defendant officers violated Graham Dyer's right to be free from unreasonable seizure of his person when they used force excessive to the need. Defendants' actions were objectively unreasonable and violated Graham's Fourth Amendment rights.  There were more than five officers at the scene to restrain a 5'4" 102 lb. teenager.  The officers used extreme physical force and multiple tasers to restrain Graham Dyer.  Immediately prior to the arrival of the officers, Graham was uninjured and unharmed.  His friends dispersed and left Graham to encounter the officers.  One of his friends then heard Graham screaming and returned to find him in the custody of the police.  During the restraint process and despite tasing Graham to the point where he was incapacitated and handcuffed, the officers inflicted blunt force to the extent that it caused Graham to suffer serious head injury.  Such force was not necessary to restrain Graham and was objectively unreasonable under the circumstances, resulting in injury and eventually death.

44. The force used by the officers in taking Graham Dyer into custody and transporting him to the jail was objectively unreasonable and no reasonable officer would have used such force under those circumstances.  At the time in question, it was clearly established that using blunt force on a young man who was also tased and/or in handcuffs and restrained by multiple officers

was unconstitutional.  Furthermore, keeping Graham in restraints when he is nonresponsive and nonreactive and preventing him from receiving necessary medical treatment was unnecessary, excessive, objectively unreasonable and a violation of his constitutional rights.

45.   The officers allege that Graham sustained blunt force head trauma in the patrol car while being transported to jail.  They allege that once in the patrol car, Graham began violently beating his head against the cage and the car door.  The officers were aware of facts demonstrating a substantial risk of serious harm and disregarded the risk by failing to take reasonable measures to obtain treatment for Graham after he sustained serious injury during transport to the jail.  They completely ignored his obvious injury, made no effort to determine his symptoms in the hours before he was found unresponsive and no effort to follow up.  There can be no greater deliberate indifference than to completely ignore the obvious injuries and completely ignore the serious risks associated therewith.  Graham Dyer arrived at the jail crying out in pain and violently ill, with severe injuries, abrasions, contusions and obviously in critical condition.  Despite his obvious need for care, he was restrained in a chair and left to die.  Left unmonitored and untreated, Graham suffered alone in a jail cell.  When paramedics arrived at the jail, Graham was unresponsive with nonreactive pupils.  Even so, the officers refused to remove the restraints and the paramedics were unable to intubate or otherwise properly treat Graham on the way to the hospital.

46.   All Defendants, including the individual Defendants, were "state actors" under 42 U.S.C. § 1983 at the time of the events made the basis of this lawsuit.  Each individual Defendant was personally involved in the deprivation of Graham Dyer's constitutional rights.  Each individual Defendant was deliberately indifferent to Graham Dyer's serious medical needs.

47.     The individual Defendants knew that Graham Dyer faced a substantial risk of serious harm and failed to take reasonable steps to abate it, violating Graham's constitutional rights for which they are liable under 42 U.S.C. § 1983 and for which Plaintiff seek all economic damages, all compensatory damages, all punitive damages and all attorneys fees available under the law.

Parent-Child Relationship - Substantive Due Process

48.     Defendants violated Graham's and his parents' substantive due process rights, guaranteed by the Fourteenth Amendment, in that they adversely affected and destroyed a parent-child liberty interest in family relationship and society.

Survival and Wrongful Death Claims

49.     Mr. and Mrs. Dyer may recover individually for their severe mental anguish and emotional distress, and that of their son, caused by Defendants' conduct. Plaintiffs suffered extreme distress, anxiety, shock, and mental anguish because of Graham's death.

50.     Plaintiffs sue for actual damages, including, but not limited to, their pain, mental anguish, loss of companionship and society, loss of inheritance, and that of their son, as well as pre-judgment and post-judgment interest and costs.

ATTORNEYS' FEES

51.     Mr. and Mrs. Dyer are entitled to recover attorneys' fees, costs, litigation expenses, and expert fees, as allowed, pursuant to 42 U.S.C. §1988, 12205.

JOINT AND SEVERAL LIABILTY

52.     All Defendants are jointly and severally liable.

**DEMAND FOR JURY**

53.     Plaintiffs request a trial by jury.

CONCLUSION AND PRAYER

THEREFORE, Mr. and Mrs. Dyer pray for judgment against all Defendants for actual and compensatory damages, declaratory relief, injunctive relief, and for statutory attorneys' fees, costs, and expenses. They pray for punitive damages against the individual Defendants. Finally, they seek all other additional relief as the Court deems just and proper.

Respectfully submitted,

s/Susan E. Hutchison
Susan E.  Hutchison
Texas Bar No. 10354100
hutch@hsjustice.com

Christopher E. Stoy
Texas Bar No. 24075125
cstoy@hsjustice.com

HUTCHISON & STOY, PLLC
509 Pecan St., Ste. 201
Fort Worth, TX  76102
(817) 820-0100
817.820.0111 fax

ATTORNEYS FOR PLAINTIFFS