IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHY DYER and ROBERT DYER, | § | |
| Individually and as Representative of the | § | |
| Estate of Graham Dyer, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Cause No. 3:15-CV-02638-B |
| | § | |
| CITY OF MESQUITE, TEXAS; JACK | § | |
| FYALL, RICHARD HOUSTON, ALAN | § | |
| GAFFORD, ZACHARY SCOTT, WILLIAM | § | |
| HEIDELBURG, PAUL POLISH, JOE | § | |
| BAKER and BILL HEDGPETH | § | |
| Defendants. | § | |

## DEFENDANTS' (CITY, FYALL, HOUSTON, GAFFORD, SCOTT, POLISH & BAKER) ANSWER TO ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants the City of Mesquite, Jack Fyall, Richard Houston, Alan Gafford, Zachary Scott, Paul Polish and Joe Baker who make and file this Answer to Plaintiffs' Original Complaint ("Complaint"). This Answer is filed subject to Defendants' Motions to Dismiss which are not waived hereby, but still insisted upon. For same, Defendants would state the following:

1.      Defendants admit the allegations in paragraphs 1 and 2 of the Complaint. Defendants do not contest jurisdiction or venue in this Honorable Court.

2.      Defendants admit that the individual defendants herein were acting under color of law and that Defendants Fyall, Houston, Gafford, Scott, Hedgpeth and Heidelberg[1] were

_____

[1] Heidelberg is mis-named and sued mistakenly herein as "Heidelburg".

responsible for upholding the laws of the United States and Texas.   To the extent paragraph 3 of the Complaint contains additional allegations, said additional allegations are denied.

3.      Except for the spelling of Defendant Heidelberg's name, Defendants admit the allegations in paragraphs 4 through 9, 11 and 12 of the Complaint.

4.      Defendants deny the allegations in paragraph 10 of the Complaint.

5.      Defendants admit that Graham Dyer (decedent) died in August, 2013.  Defendants deny that decedent was in the physical custody of the Mesquite holding facility at the time of his death.   To the extent paragraph 13 of the Complaint contains additional allegations, said additional allegations are denied.

6.      Defendants admit that decedent took LSD prior to his encounter with police officers on August 13th, 2013, and that decedent was 18 years old at that time.  Defendants deny the remaining allegations in the first two sentences of paragraph 14 of the Complaint. Defendants are without sufficient information or belief to admit or deny the allegations in the third, fourth and fifth sentences of said paragraph and must deny same at this time.  Defendants deny the allegations in the sixth and seventh sentences of said paragraph.   To the extent paragraph 14 of the Complaint may be construed to contain additional allegations not heretofore addressed, said allegations are denied.

7.      Defendants admit that a second person was arrested who was apparently in the company of decedent prior to decedent's encounter with officers.   Defendants are without sufficient information or belief to admit or deny the remaining allegations in paragraph 15 of the Complaint and therefore must deny same.

8.     Defendants deny the allegations in the first sentence of paragraph 16 of the Complaint and admit the allegations in the second sentence.

9.     Defendants deny that officers "contend" that decedent had a "serious" head wound prior to the officers' arrival and admit the remaining allegations in paragraph 17 of the Complaint.

10.     Defendants admit that decedent was placed in handcuffs and leg restraints; that decedent struck his head against the interior of the police car during transport; that a taser was deployed in an effort to control decedent, prevent escape and prevent him from injuring himself; and, that decedent was transported to the Mesquite holding facility.   Defendants deny the remaining allegations in paragraph 18 of the Complaint.

11.     Defendants are without sufficient information or belief to admit or deny the allegations in the first and second sentences of paragraph 19 of the Complaint and, therefore, must deny same.   Defendants admit that decedent was placed in a restraint chair.  Defendants deny the remaining allegations in paragraph 19 of the Complaint.

12.     Defendants admit the allegations in the first sentence of paragraph 20 of the Complaint and deny the remaining allegations in said paragraph.

13.     Defendants admit that decedent was transported to Baylor Hospital.   Defendants are without sufficient information or belief to admit or deny the remaining allegations in paragraph 21 and therefore must deny same.

14.     As to the allegations in paragraph 22 of the Complaint, Defendants admit that the City received several requests for information pursuant to the Texas Public Information Act and that it was determined by the City and by the Texas Attorney General's Office that much of the

requested information was not subject to disclosure under that Act.    Defendant further admits that information which was public and subject to disclosure under the Texas Public Information Act was released to the requesting parties.    Defendant denies the remaining allegations as phrased in paragraph 22 of the Complaint.

15.    In response to paragraph 23, Defendants incorporate their previously pleaded admissions, denials and responses to paragraphs 9 though 16 of the Complaint as if same were fully set forth herein.

16.    Defendants deny the allegations in paragraphs 24 through 35 of the Complaint.

17.    Defendants are without sufficient information or belief to admit or deny the allegations in the first sentence of paragraph 36 of the Complaint and therefore must deny same. Defendants deny the remaining allegations in paragraphs 36 and 37 of the Complaint.

18.    In response to paragraph 38, Defendants incorporate their previously pleaded admissions, denials and responses to paragraphs 9 though 16 of the Complaint as if same were fully set forth herein.

19.    Defendants admit that Defendants Polish and Baker examined decedent at the scene of the arrest; that decedent was in custody of Mesquite police at the time; and, that an injury to decedent's forehead was visible to some of the officers at the time.    Defendants deny the remaining allegations in paragraph 39 of the Complaint.

20.    Defendants are without sufficient information or belief to admit or deny the allegations in the first and second sentences of paragraph 40 of the Complaint because the terms therein do not specify the types of "risk", "harm", "symptoms", "illness" or "trauma" to which the allegations refer.   Therefore Defendants must deny these allegations at this time.   Defendants

admit that Defendants Polish and Baker did not conduct a medical transport of decedent from the scene of the arrest.  Defendants deny the remaining allegations in paragraph 40 of the Complaint.

21.     Defendants deny the allegations in paragraphs 41, 42, 43, 44 and 45 of the Complaint.

22.     Defendants admit the allegation in the first sentence of paragraph 46 of the Complaint and deny the remaining allegations in said paragraph.

23.     Defendants deny the allegations in paragraphs 47, 48 and 49 of the Complaint.

24.     Defendants admit that Plaintiffs seek recovery of the damages listed in paragraphs 50 and 51 of the Complaint, but deny that Plaintiffs herein are entitled to recover any damages from these Defendants.

25.     Defendants deny all remaining allegations in the Complaint not heretofore specifically addressed.

## AFFIRMATIVE DEFENSES

26.     The damages sought by Plaintiffs were, on information and belief, the result of the negligent and/or willful conduct of the Plaintiffs' decedent which conduct was the proximate, producing and/or sole cause of all such damages.  Defendants invoke the doctrine of comparative causation.

27.     Plaintiffs' Complaint fails to adequately plead a claim and should be dismissed pursuant to F.R.C.P. 12(b)(6).

28.     The due process claim asserted by Plaintiffs Mr. and Mrs. Dyer on their individual behalf fails to state a cognizable claim and should be dismissed.

29.     The individual Defendants herein plead the defense of qualified immunity and, for the reasons stated herein, would show that Plaintiffs' Complaint fails to meet Plaintiffs' burden to overcome that defense.  In further support of their qualified immunity defense, the individual defendants plead the following.

21.     Defendant Fyall pleads and invokes the defense of qualified immunity to Plaintiffs' claims.   In support thereof, Defendant pleads the following:  At all times pertinent hereto, Defendant Fyall was a public official employed as a police officer for the City of Mesquite, Texas.   As such, Defendant was a commissioned peace officer under the laws of the State of Texas.    All actions taken by Defendant Fyall were taken pursuant to that authority. Officer Fyall has been a police officer in the State of Texas for more than eight years.   He holds the Basic and Intermediate Certificates issued by the Texas Commission on Law Enforcement (now TCOLE, formerly known as "TCLEOSE").    He has completed more than 5670 training hours approved by the Texas Commission on Law Enforcement.   His formal education includes a Bachelor of Science degree from the U.S. Air Force Academy.

22.     Officer Fyall was on duty in uniform in a marked Mesquite police vehicle assigned to patrol duties when he responded to a disturbance call at a local middle school in Mesquite.   On arrival, Officer Fyall observed Dyer (Plaintiffs' decedent) and another young man handcuffed and in custody.    Officer Fyall observed both detained persons as being belligerent and cursing loudly.    Both appeared intoxicated and Dyer was thrashing about requiring officers to restrain him to prevent escape, assault or injury.  Officers Gafford, Houston, Heidelberg and Scott were already on scene when Officer Fyall arrived.   Officer Fyall observed that Dyer's

clothes were wet and that Dyer's shoulder length hair was stringy and wet.  Officer Fyall saw Dyer hit his head on the ground and bite a mouthful of grass.  Officer Fyall also observed an abrasion on Dyer's forehead which was difficult to see due to the hair.   Dyer did not appear to be seriously injured.   Officer Fyall stood by while paramedics attempted to examine both individuals and observed that the paramedics were apparently unable to fully examine both due to their combativeness and physical refusal to permit examination.   It was determined that neither of the detained persons appeared seriously injured and officers began to load them into police vehicles.  Dyer was physically combative and resisting requiring several officers to carry him to the police vehicle and place him inside.   During this process, Dyer bit Officer Fyall on the finger causing an injury (breaking the skin causing bleeding) which was treated at the scene by paramedics.   As officers placed Dyer in the back of the police vehicle, Dyer violently kicked Officer Fyall in the chest.   At this time, Dyer did not appear injured to Officer Fyall since Dyer was able to violently resist the officers and assault Officer Fyall.   Officer Fyall completed paperwork due to his injury and then returned to patrol duties.  Officer Fyall did not participate in the transport of the arrested persons and had no further involvement with either of them after they were removed from the scene of the arrest.

23.    Defendant Houston pleads and invokes the defense of qualified immunity to Plaintiffs' claims.   In support thereof, Defendant pleads the following:  At all times pertinent hereto, Defendant Houston was a public official employed as a police sergeant for the City of Mesquite, Texas.   As such, Defendant was a commissioned peace officer under the laws of the State of Texas.   All actions taken by Defendant Houston were taken pursuant to that authority.

Sgt. Houston has been a police officer in the State of Texas for more than 14 years.   He holds the Basic, Intermediate, Advanced and Masters Certificates issued by the Texas Commission on Law Enforcement (now TCOLE, formerly known as "TCLEOSE").     He has completed more than 2399 training hours approved by the Texas Commission on Law Enforcement.   His formal education includes a B.A. degree in Criminal Justice; Basic Course in Applied Police Science, class 153; and, Institute for Law Enforcement Administration School of Police Supervision.

24.     Sgt. Houston was on duty in uniform in a marked Mesquite police vehicle assigned to patrol duties when responded to the disturbance call involving Dyer (Plaintiffs' decedent).    Sgt. Houston pulled up to the location in his vehicle as Officer Gafford was approaching Dyer on the grassy lawn of the school.   The area was dark with the only effective illumination being headlights, flashing emergency lights, flashlights and possibly a streetlight in the vicinity.     Dyer was on the ground where he was handcuffed by Sgt. Houston and Officer Gafford.   Dyer was struggling with the officers while screaming and cursing the officers during the entire encounter.   After the initial contact, Officers were able to restrain Dyer by handcuffing him and using minimal physical force in doing so.   Sgt. Houston observed Dyer to be sweaty, pupils dilated and to have minor abrasions on his arms and forehead, although the forehead was difficult to see due to long hair and poor lighting.   Sgt. Houston immediately called for paramedics to examine Dyer due to his apparent intoxication and frenzied state.   During this time, additional officers arrived at the location.   An additional intoxicated person walked up and was arrested.   While waiting on the paramedics, Dyer was noticed to be banging his head on the grass without visible injury since the ground was soft apparently due to recent rain.   Dyer was

also attempting to get up from the ground.  Sgt. Houston and the other officers restrained Dyer to prevent escape, assault or injury.  Sgt. Houston observed the paramedics arrive and attempt to examine both Dyer and the second prisoner both of whom were verbally and physically resisting the paramedics' attempts to examine them.   The paramedics told the officers they would not be transporting the prisoners and the other officers then loaded the prisoners in the police vehicles. Sgt. Houston observed that Dyer was very combative requiring several officers to load him in the police vehicle.   Sgt. Houston was told that during this process, Dyer bit one of the officers (Fyall) causing an injury which was treated at the scene by paramedics.   At the detention facility, Sgt. Houston held the door while other officers carried Dyer, who was still screaming and physically resisting, into a padded cell where he was placed in a restraint chair.  Sgt. Houston observed Dyer spitting on officers as they strapped him into the restraint chair.  Sgt. Houston did not otherwise participate in the transport of Dyer or the other prisoner and had no further involvement with either of them after they left the scene of the arrest.

25.     Defendant Gafford pleads and invokes the defense of qualified immunity to Plaintiffs' claims.   In support thereof, Defendant pleads the following:  At all times pertinent hereto, Defendant Gafford was a public official employed as a police officer for the City of Mesquite, Texas.   As such, Defendant was a commissioned peace officer under the laws of the State of Texas.   All actions taken by Defendant Gafford were taken pursuant to that authority. Officer Gafford has been a police officer in the State of Texas for more than 16 years.   He holds the Basic, Intermediate, Advanced and Masters Certificates issued by the Texas Commission on Law Enforcement (now TCOLE, formerly known as "TCLEOSE").     He has completed more

than 4300 training hours approved by the Texas Commission on Law Enforcement.   His formal education includes a Bachelor of Science degree from East Texas State University.

26.     Officer Gafford was on duty in uniform in a marked Mesquite police vehicle assigned to patrol duties when he responded to a disturbance call at a local middle school. Officer Gafford was the first officer to arrive and, as he pulled up, he saw a male hiding in the bushes by the school building.   Officer Gafford approached the male on foot when the male (later learned to be Dyer – Plaintiffs' decedent) came out from the bushes and charged Officer Gafford with his fists clenched in an obvious attempt to attack the officer.   Officer Gafford unsuccessfully attempted to deploy his Taser which malfunctioned although it made the distinctive buzzing sound indicating a discharge.   The darts didn't fire on the Taser so it made no contact with Dyer.   Nevertheless, upon hearing the arcing sound of the Taser, Dyer dropped to the ground.   Dyer then attempted to get up and Officer Gafford, with the help of Sgt. Houston, overcame Dyer's physical resistance and handcuffed him.   Sgt. Houston then radioed his dispatcher to send paramedics to the scene.   While awaiting the paramedics' arrival, Dyer continued screaming and cursing; began hitting his head on the soft ground; and attempted to rise from the ground.   Officer Gafford observed no injury to Dyer from this activity but did observe that Dyer was sweaty and appeared highly intoxicated. The officers restrained Dyer on the ground to prevent escape, assault or injury.   A second suspect walked up to the scene who was contacted and arrested by Sgt. Houston.   Other officers began arriving to assist.   Officer Gafford observed scrapes and contusions on Dyer, but did not observe anything which appeared to be a serious injury.   During the arrest and detention at the middle school, Officer Gafford never saw

Dyer strike his head on anything other than the soft ground and never observed any injury mechanism to Dyer.   A second suspect walked up to the scene who was also intoxicated and belligerent.  The second suspect later told officers that he and Dyer had consumed LSD earlier in the evening after he was also arrested for public intoxication.       Paramedics arrived and attempted to examine both arrested persons who verbally and physically resisted that effort. Officer Gafford observed the paramedics attempt to apply a pulse oximeter device on Dyer's finger, but were unable to do so due to Dyer's physical resistance.  Officer Gafford observed the paramedics clear the suspects for arrest and incarceration whereupon Gafford and other officers began loading them into police vehicles.  Dyer was combative, thrashing about and physically resisting requiring several officers to overcome the physical resistance and load him in the vehicle.   Officer Gafford followed the vehicle containing Dyer in his police vehicle as they drove to the Mesquite detention facility.   During the drive, Officer Gafford could observe from behind that Dyer was thrashing about in the back seat of the police vehicle causing it to rock in a violent manner.   The driver of the vehicle containing Dyer stopped in order that Officers might get Dyer under better control in order to prevent escape, injury or damage to the vehicle. Officer Gafford overheard the officer driving Dyer yell at Dyer to "Quit kicking the windows". Upon stopping, Officer Gafford attempted to help the other driver restrain Dyer.  The back of the vehicle was dark which hindered the officers' efforts; although Officer Gafford was able to determine that Dyer continued to violently kick at the officers and vehicle and was attempting to escape.   Officer Gafford deployed his Taser in a drive stun mode attempting to strike the leg area in an attempt to control Dyer with limited effect.    The officers then proceeded to the

detention facility in rapid fashion where Dyer was removed from the vehicle with the assistance of several officers and placed in a restraint chair.   Officer Gafford then resumed his other patrol duties and had no more involvement with Dyer after that time.

27.     Defendant Scott pleads and invokes the defense of qualified immunity to Plaintiffs' claims.   In support thereof, Defendant pleads the following:   At all times pertinent hereto, Defendant Scott was a public official employed as a police officer for the City of Mesquite, Texas.   As such, Defendant was a commissioned peace officer under the laws of the State of Texas.   All actions taken by Defendant Scott were taken pursuant to that authority. Officer Scott has been a police officer in the State of Texas for more than six years.   He holds the Basic and Intermediate Certificates issued by the Texas Commission on Law Enforcement (now TCOLE, formerly known as "TCLEOSE").    He has completed more than 1826 training hours approved by the Texas Commission on Law Enforcement.   His formal education includes High School graduation and more than 75 hours college credits toward a Bachelor's Degree in Criminal Justice.

28.     Officer Scott was on duty in uniform in a marked Mesquite police vehicle assigned to patrol duties when he responded to a disturbance call at a local middle school.   On arrival, Officer Scott observed that a person later learned to be Dyer (Plaintiff's decedent) was under arrest for intoxication and restrained on the soft ground in the yard of the school.   Officer Scott observed Dyer to be screaming, cursing, attempting to get off the ground and swinging his head up and down.   Dyer was restrained to prevent escape, assault and injury.   Officer Scott conducted a field search of Dyer for weapons and retrieved his wallet for identification and a cell

phone.  Officer Scott also observed a second suspect walk up who was also intoxicated and belligerent.  That second suspect was placed under arrest for public intoxication.  While Officer Scott observed minor scrapes and bruises on Dyer, he observed no indication of any serious injury.  Officer Scott observed the paramedics arrive and attempt to examine both detained suspects whose resistance hampered the efforts by the paramedics.  After the paramedics cleared the suspects to be taken to jail, Officer Scott loaded and transported the second intoxicated person to the Mesquite detention facility without incident.   After leaving the scene, Officer Scott had to stop with Officers Heidelberg and Gafford to assist in restraining Dyer from thrashing about in the back of Officer Heidelberg's vehicle.   At the Mesquite detention facility, Officer Scott assisted other officers in removing Dyer from the vehicle and placing him in a restraint chair.   While being placed in the restraint chair, Officer Scott observed Dyer spit on another officer.   Several times during the above incidents, Officer Scott observed Dyer swinging his head and each time, Officer Scott restrained Dyer's movements to prevent this action. Officer Scott dispatched to follow the ambulance later in the night when Dyer was transferred from the detention facility to Baylor Hospital.   Officer Scott had no further contact or involvement with Dyer.

29.    Defendant Polish pleads and invokes the defense of qualified immunity to Plaintiffs' claims.   In support thereof, Defendant pleads the following:  At all times pertinent hereto, Defendant Polish was a public official employed as a paramedic for the City of Mesquite, Texas.   As such, Defendant was a certified paramedic under the laws of the State of Texas.   All actions taken by Defendant Polish were taken pursuant to that position.   Paramedic Polish has

been a paramedic/EMT in the State of Texas for more than 8 years.    He is a certified EMT/Paramedic by the State of Texas and has completed approximately 370 training hours approved by the State for paramedic and/or EMT training.

30.    At the time of the incident, Defendant Polish responded to the scene in a Mesquite Fire Department ambulance after being dispatched by the Mesquite Fire Department.   Prior to arrival at the scene, Defendant Polish was told that the call was in response to a male rolling on the grass screaming.  Defendant Polish played no part in the detention or arrest of decedent and, indeed, didn't even know decedent was under arrest or detained until arriving at the scene and observing decedent in handcuffs.   Upon his arrival, Defendant Polish observed two males on the ground, handcuffed, with police officers standing around them.    The area was dark and illuminated only by vehicle headlights, flashing lights from emergency vehicles, flashlights held by others and possibly streetlights in the vicinity.  Under these conditions, Polish's visibility was limited.   The officers mentioned they suspected the persons had taken drugs and that Dyer had been beating his head on the ground.    Decedent was examined and assessed primarily by paramedic Baker while Polish attempted to assess the other prisoner.    The assessment of the other prisoner could not be completed due to the prisoner's combative actions and physical refusal to be assessed.    Polish observed similar behavior on the part of the second prisoner, later learned to by Dyer – Plaintiffs' decedent. The arrested persons did not appear to be seriously injured.  Based upon medical protocols and applicable procedures, these observations did not warrant a medical transport of decedent and the police officers on the scene were so advised. Defendant Polish remained at the scene after decedent was taken away in order to treat an injury

to one of the officers who was bitten by decedent as the officers were attempting to secure decedent into the police car for transport.      Defendant Polish had no further contact or interaction with decedent after this time.

31.      Defendant Baker pleads and invokes the defense of qualified immunity to Plaintiffs' claims.   In support thereof, Defendant pleads the following:  At all times pertinent hereto, Defendant Baker was a public official employed as a paramedic for the City of Mesquite, Texas.   As such, Defendant was a certified paramedic under the laws of the State of Texas.   All actions taken by Defendant Baker were taken pursuant to that position.   Paramedic Baker has been a paramedic/EMT in the State of Texas for more than six years.    He is a certified Paramedic by the State and, additionally, holds the Pediatric Education for Prehospital Professionals, Advanced Cardiac Life Support, Basic Life Support and International Trauma Life Support Certificates.   He has completed more than 350 training hours approved by the State for paramedic and/or EMT training.   His formal education includes an Associate degree from Tyler Junior College, a BS degree from Texas A&M University and completion of paramedic school at U.T. Southwestern Medical Center.

32.      At the time of the incident, Defendant Baker responded to the scene in a Mesquite Fire Department ambulance after being dispatched by the Mesquite Fire Department.   Prior to arrival at the scene, Defendant Baker was told there was a male rolling on the grass screaming. Defendant Baker played no part in the detention or arrest of decedent and, indeed, didn't know decedent was under arrest or detained until arriving at the scene and observing decedent in handcuffs.  Upon his arrival, Defendant Baker observed two males on the ground, handcuffed,

with police officers standing around them.   The area was dark with limited illumination thus Baker's visibility was limited.   The officers mentioned they suspected the persons had taken drugs and Baker observed decedent hit his head on the ground.  Baker observed that the ground was soft from recent rains.   Baker checked the person on the sidewalk first and found him to be uninjured, uncooperative and cursing Baker and the officers.  Baker then walked over to examine the second person, later learned to be Dyer (Plaintiffs' decedent) and likewise found Dyer to be combative, uncooperative and cursing all around him.    Dyer appeared coherent enough to perceive that Baker was trying to examine and assess him and repeatedly told Baker to stay away.   Baker was able to determine that Dyer's radial pulse was approximately 120 with pupils equal and not constricted.  Baker was unable to take a blood pressure or pulse-oximeter reading because Dyer was too combative to permit those readings.    Baker observed no head injury and observed no symptoms of a head injury.   Baker's ability to view decedent's forehead was limited by the conditions, decedent's combativeness and decedent's wet, stringy hair covering his face.  Baker observed Dyer continuing to be very combative as he observed it took several officers to load him (Dyer) into the police vehicle.  Baker's observations of Dyer were consistent with that of a very angry, intoxicated person and Baker did not detect any signs of head trauma to Decedent nor did Baker receive any information to indicate same.    Based upon medical protocols and applicable procedures, these observations did not warrant a medical transport of decedent and the police officers on the scene were so advised.   Defendant Baker remained at the scene after decedent was taken away in order to treat an injury to one of the officers who was

bitten by decedent as the officers were attempting to secure decedent into the police car for transport.   Defendant Baker had no further contact or interaction with decedent after this time.

33.   The Due Process claim against the paramedics pursuant to 42 U.S.C. 1983 fails to assert a cognizable legal claim and should be dismissed.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray that they go hence without day, recover costs, including reasonable attorney's fees, pursuant to 42 U.S.C. 1988, in this behalf expended and for such other and further relief, both general and special, to which Defendants may be justly entitled.

Respectfully submitted,

By:   **/s/ Joe C. Tooley**
        State Bar No. 20129750
510 Turtle Cove, Suite 112
Rockwall, Texas 75087
(972) 722-1058
(972) 722-1070 (Facsimile)
Joe@TooleyLaw.com

ATTORNEY FOR DEFENDANTS
CITY OF MESQUITE, FYALL,
HOUSTON, GAFFORD, SCOTT, POLISH
and BAKER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure, as modified by this Court's ECF Orders, on this 31st day of August, 2015.

**/s/ Joe C. Tooley**

DEFENDANTS' (CITY, FYALL, HOUSTON, GAFFORD, SCOTT, POLISH & BAKER) ANSWER,
NO. 3:15-CV-02638-B.  Page 17