UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHY DYER and ROBERT DYER, Individually and as Representative of the Estate of Graham Dyer, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-2638-B |
| CITY OF MESQUITE, TEXAS, JACK FYALL, RICHARD HOUSTON, ALAN GAFFORD, ZACHARY SCOTT, WILLIAM HEIDELBURG, PAUL POLISH, JOE BAKER, and BILL HEDGPETH, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil rights case involving allegations of excessive force and failure to provide medical treatment against the City of Mesquite as well as several Mesquite police officers and two paramedics arising out of an arrest that culminated in the death of the eighteen-year old suspect while in police custody. Before the Court are Defendants' second round of Motions to Dismiss under Fed. R. Civ. P. 12(b)(6), this time challenging Plaintiffs' Amended Complaint (Doc. 46). Specifically, before the Court are: (1) Defendants Jack Fyall, Richard Houston, Alan Gafford, Zachary Scott, William Heidelburg and Bill Hedgpeth's (collectively the Officer Defendants) and Defendants Paul Polish, Joe Baker's (collectively the Paramedic Defendants) Motion to Dismiss (Doc. 49); and (2) Defendant City of Mesquite's (Mesquite) Motion to Dismiss (Doc. 47). For the reasons that follow, the Court **GRANTS** the Paramedic Defendants' portion of the Motion to Dismiss (Doc. 49); **DEFERS**

**RULING** on the Officer Defendants' portion of the Motion to Dismiss pending limited discovery and summary judgment (Doc. 49); and **GRANTS** Mesquite's Motion to Dismiss (Doc. 47) in its entirety.

## I.

## BACKGROUND[1]

A.    *Factual and Procedural*

As addressed in this Court's previous Order granting Defendants' Motions to Dismiss Plaintiffs' Original Complaint,[2] this civil rights case stems from a series of events beginning on the evening of August 13, 2013 when Plaintiffs Kathy and Robert Dyer's (collectively the Dyers or Plaintiffs) teenage son, Graham Dyer (Graham), while out with friends in Mesquite, Texas, ingested LSD, causing him to become highly agitated which, in turn, led to his arrest by several Mesquite police officers.[3] Hours later, while still in Mesquite custody, Graham was pronounced dead from "craniocerebral trauma."[4] Other than the undisputed fact that Graham sustained his fatal injuries while he was in police custody, the cause of his "craniocerebral trauma"—whether due to force by arresting officers or self-inflicted—is highly contested in this case and is at the core of this second round of Motions to Dismiss by Defendants. Plaintiffs claim that their son was a victim of excessive force and of a failure to provide adequate medical care, so they filed this suit under 42 U.S.C. § 1983,

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' Amended Complaint (Doc. 46), as well as from the parties' briefing on the Motions to Dismiss before the Court. Any contested facts are noted as such.

[2] Doc. 45, Mem. Op. & Order at 1–3.

[3] Doc. 46, Pls.' Am. Compl. ¶¶ 14–30.

[4] *Id.*

as representatives of Graham's estate, against the Officer and Paramedic Defendants and the City of Mesquite.[5]

In their Amended Complaint, Plaintiffs allege that the Officer Defendants involved in the arrest—Fyall, Houston, Gafford, Scott, Heidelburg, and Hedgpeth—used excessive force against Graham in violation of his Fourth Amendment rights and denied him adequate medical treatment under the Fourteenth Amendment.[6] Plaintiffs further allege that the Paramedic Defendants, Polish and Baker, denied Graham proper medical treatment when they examined him and cleared him for transport to the jail at the scene of the arrest.[7] Plaintiffs also allege that the City of Mesquite is liable for the excessive force and denial of medical care by the Officer and Paramedic Defendants under a theory of municipal liability.[8] Finally, Plaintiffs bring claims in their individual capacities against all Defendants to recover for their own injuries for interference with a parent-child relationship and for wrongful death.[9]

B.    *Qualified Immunity*

In addition to the above-mentioned claims, and inextricably intertwined with the resolution of the Officer and Paramedic Defendants' Motion to Dismiss and qualified immunity defenses, is

---

[5] In describing Plaintiffs' specific claims, the Court relies on the their First Amended Complaint (Doc. 46), the subject of the pending Motions to Dismiss, and not on the now-dismissed Original Complaint (Doc. 1).

[6] Doc. 46, Pls.' Am. Compl. ¶¶ 53–61.

[7] *Id.* ¶¶ 48–52.

[8] *Id.* ¶¶ 33–46.

[9] *Id.* ¶¶ 62–63.

Plaintiffs' renewed request[10] for limited discovery.[11] Specifically, in their Amended Complaint,

Plaintiffs seek information on the specific actions of each of the Officer Defendants involved in the

events surrounding the arrest.[12] More precisely, Plaintiffs allege the following:

> The Dyers have made numerous attempts to obtain sufficient information to identify the specific actions of specific Defendants, which the Defendants have thwarted at every turn, refusing to turn over detailed reports, statements and camera footage. However, through a Freedom of Information request to the FBI, the Dyers have obtained redacted camera footage and a redacted police report which supply quite a bit of information EXCEPT that all identifying information has been redacted. Thus, while the Dyers can identify who was involved in the encounter with Graham, they cannot identify specifically which individual engaged in which conduct . . . .

Doc. 46, Pls.' Am. Compl. ¶ 13.

For their part, Defendants hotly dispute Plaintiffs' version of events and move to dismiss the

Amended Complaint on much the same grounds they relied upon in their first round of motions,

including failure to state a claim under Fed. R. Civ. P. 12(b)(6) and, as to the Officer and Paramedic

Defendants, qualified immunity.[13] In urging dismissal, Defendants place a heavy emphasis on

Plaintiffs' failure to provide any factual specificity in their pleadings that would tie each of

"unidentified officers" to specific "alleged [illegal] actions."[14] But, as in their first round of Motions

---

[10] The Dyers first requested limited discovery in their responsive briefing during the initial round of Motions to Dismiss, but their request was opposed by Defendants and denied by the Court primarily due to the inadequacy of the pleadings in their Original Complaint. Doc. 38, Pls.' Resp. 2; Doc. 45, Mem. Op. & Order at 15–16.

[11] Doc. 46, Pls.' Am. Compl. ¶ 13.

[12] *Id.*

[13] *See* Docs. 47, 48, 49, 50.

[14] Doc. 48, Defs.' Br. in Supp. of Mot. to Dismiss Am. Compl. ¶ 12 [hereinafter Mesquite's Br.]; Doc. 50, Defs.' Br. in Supp. of Mot. to Dismiss Am. Compl at ¶¶ 7, 11–19; Doc. 53, Defs.' Reply ¶ 2; *see also* Doc. 25, Br. in Supp. of Mot. to Dismiss by the City of Mesquite ¶ 12; Doc. 27, Br. in Supp. of Mot. to Dismiss by Defs.

to Dismiss, Defendants continue to strongly oppose any, even limited discovery, by Plaintiffs to

identify the actions of the individual Officer Defendants.[15] In opposing discovery, Defendants point

to this Court's reasoning denying Plaintiffs' discovery request in the first round of Motions to Dismiss

and argue that the same reasoning should apply to this renewed request.[16] In that Order, the Court

denied Plaintiffs' request for discovery based largely on the lack of factual specificity in Plaintiffs'

Original Complaint and on the Officer and Paramedic Defendants' assertion of qualified immunity,

stating:

> Freedom from discovery is included in the qualified immunity defense, and such discovery "must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995) (emphasis omitted); *see also Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."). "[I]n the arena of qualified immunity . . . , discovery is not the place to determine if one's speculations might actually be well-founded." *Floyd v. City of Kenner, La.*, 351 F. App'x 890, 898 (5th Cir. 2009) (per curiam) (unpublished). Instead, discovery is only available when "the pleadings . . . have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation." *Id.*[17]

Defendants add that Plaintiffs do not need discovery because the "very facts" that Plaintiffs are

seeking in discovery "are presented by the individual Defendants in their answers to the Original

Complaint."[18]

---

Fyall, Houston, Gafford, Scott, Polish, & Baker ¶¶ 7, 8.

[15] Doc. 48, Mesquite's Br. ¶ 20.

[16] *Id.*

[17] Doc. 45, Mem. Op. & Order at 15–16.

[18] Doc. 48, Mesquite's Br. ¶ 20.

Not surprisingly, Plaintiffs disagree and counter:

Defendants complain that the Dyers failed to ascribe specific conduct to specific officers during the course of the restraint, arrest and confinement. As Plaintiffs set forth in their amended pleading, Plaintiff were able to obtain videos from the FBI. However, the videos blurred over the faces of the officers and contained no identifying information. While the individual Defendants filed answers admitting to some of the conduct alleged, they completely ignore the conduct that is the basis of the constitutional claims in this case. The '"Defendants do NOT identify the officer that stomped on Graham's head at the scene of initial restraint, the officer that pulled his hair with extreme force during restraint in the car, the officer who tasered Graham repeatedly in the testicles while he was in the back of the car in full restraints or the officers who dragged him from the back of the car, completely unresponsive and in obvious need of urgent medical care, to put him in full restraints in the jail.

Doc. 52, Pls.' Resp. at 2.

With Plaintiffs' request for discovery squarely back before the Court, reinforced this time by facts gleaned from the above-described redacted video footage and police report pertaining to the arrest, the Court must revisit the discovery issue. While Defendants are correct in their assertion that qualified immunity protects defendants asserting the defense from pretrial discovery, there are exceptions to this principle. *See Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). Specifically, "'if further factual development is necessary to ascertain the availability of . . . [the qualified immunity] defense,'" discovery, "narrowly tailored to uncover only those facts needed to rule on the immunity claim" may be permitted. *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). But first, the district court must carefully ascertain that the plaintiff has alleged "'specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Id.* (quoting *Backe,* 691 F.3d at 648). This inquiry "incorporates the pleading standards established in *Twombly* and *Iqbal.*" *Jackson v. Mississippi*, 5:12-cv-94-DPJ-FKB, 2012 WL 5185726, at *2 (S.D. Miss. Oct. 18, 2012) (citing

*Backe*, 691 F.3d at 648). Assuming the allegations meet this standard, then and only then, if the court still cannot resolve the qualified immunity defense without further factual development, the court may defer its qualified immunity ruling and order discovery "'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" *Zapata*, 750 F.3d at 485 (quoting *Lion Boulos v. Wilson,* 834 F.2d 504, 507 (5th Cir. 1987)). And, given what is at stake—overcoming qualified immunity's protection from pretrial discovery—the district court's review process has been described as a "careful procedure." *Id.* (quoting *Backe,* 691 F.3d at 648).

    With these exacting standards in mind, the Court turns to examine Plaintiffs' factually-enhanced amended pleadings to determine if they contain the requisite specificity described above. If the pleadings measure up, the Court will address Plaintiffs' request for limited discovery and determine what, if any, limited discovery is needed to rule on Officer and Paramedic Defendants' qualified immunity defense. Once this issue has been resolved as to the Officer and Paramedic Defendants, the Court will turn its attention to Mesquite's Motion to Dismiss (Doc. 47), and the personal claims brought by Plaintiffs against all Defendants.

## II.

## LEGAL STANDARD

    Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted). As mentioned, these pleading standards drawn from *Twombly* and *Iqbal* inform the Court's analysis of the Officer and Paramedic Defendants' qualified immunity defense below. *Jackson*, 2012 WL 5185726, at *2 (citing *Backe*, 691 F.3d at 648).

## III.

## ANALYSIS

A.   *Qualified Immunity Defense of Officer and Paramedic Defendants*

Plaintiffs allege that the Officer and Paramedic Defendants violated Graham's Fourth, Eighth,[19] and Fourteenth Amendment rights, as well as Plaintiffs' own Fourteenth Amendment

---

[19] While Plaintiffs also allege a violation of Graham's rights under the Eighth Amendment, the Court previously rejected Plaintiffs' assertion that Defendants also violated Graham's Eighth Amendment rights.

rights. The Officer and Paramedic Defendants, as public officials, assert a qualified immunity defense to Plaintiffs' claims brought against them pursuant to 42 U.S.C. § 1983—(1) excessive force during the arrest (alleged against the Officer Defendants only); and (2) denial of necessary medical care following the arrest (alleged against both the Officer and Paramedic Defendants). Qualified immunity is "an immunity from suit rather than a mere defense to liability," so it is important to "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232–33 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Courts examine each public official's actions independently to determine whether he or she is entitled to qualified immunity. *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007)).

Once a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must negate the qualified immunity defense. *Newman*, 703 F.3d at 761. A public official is entitled to qualified immunity unless: (1) "a constitutional right would have been violated on the facts alleged"; and (2) "the right was clearly established" at the time of the violation. *Kitchen v. Dallas Cty.*, 759 F.3d 468, 476 (5th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Courts have discretion in deciding which of the two prongs should be addressed first. *Id.* (citing *Pearson*, 555 U.S.

---

Doc. 45, Mem. Op. & Order 5 & nn.3–4. Plaintiffs failed to correct their error in the Amended Complaint, so the Court must restate the rule. The Supreme Court has made clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Rankin v. Klevenhagen*, 5 F.3d 103, 106–07 (5th Cir. 1993) (finding Eight Amendment protections extend only to convicted prisoners and pretrial detainees subjected to force "in an effort to preserve institutional security"). Likewise, an arrestee like Graham must rely on the Fourteenth Amendment, rather than the Eighth Amendment, to protect his right to receive necessary medical care while in custody. *See Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000).

at 236).

Here, as mentioned, Plaintiffs have indicated in their Amended Complaint that they cannot identify which specific official engaged in each of the alleged unlawful actions without additional information obtained through discovery. Doc. 46, Pls.' Am. Compl. ¶ 13. As discussed above, for Plaintiffs to obtain discovery in the face of a qualified immunity defense, this Court must engage in the Fifth Circuit's "careful procedure" to ascertain whether Plaintiffs have alleged "'specific facts that both allow the court to draw the reasonable inference that the . . . [Defendants] . . . [are] liable for the harm . . . [Plaintiffs] . . . [have] alleged and that defeat . . . [Defendants'] . . . qualified immunity defense with equal specificity.'" *Zapata,* 750 F.3d at 485 (quoting *Backe,* 691 F.3d at 648). As stated, this analysis is governed by the 12(b)(6) standards set forth in *Twombly* and *Iqbal. Jackson,* 2012 WL 5185726, at *2 (citing *Backe,* 691 F.3d at 648). If the pleadings meet these requirements, the Court then determines if limited discovery is needed to rule on the qualified immunity issue. If so, the Court may defer its ruling on the issue of qualified immunity until after some narrowly tailored discovery can be conducted. *See Zapata,* 750 F.3d at 485 (citing *Backe,* 691 F.3d at 648).

To sum up, the Court will first consider whether Plaintiffs' allegations, if true, both state a claim that the Officer and Paramedic Defendants are liable for the harm alleged against them and are sufficient to defeat the Officer and Paramedic Defendants' entitlement to qualified immunity. *See infra* Section III.A.1. Assuming Plaintiffs' allegations meet this standard, the Court next examines what, if any, factual issues must be resolved before the Court can conclusively rule on the qualified immunity issue. Assuming these factual issues exist, the Court will address the need for a narrowly tailored discovery order. *See infra* Section III.A.2.

1.      Plaintiffs' Allegations Would Defeat Qualified Immunity Defense of the Officer
        Defendants But Not the Paramedic Defendants

The Court turns to the first part of the Fifth Circuit's "careful procedure" to determine whether Plaintiffs' allegations, if true, state a claim for liability against the Officer and Paramedic Defendants and would defeat the Officer and Paramedic Defendants' entitlement to qualified immunity. In order to defeat qualified immunity, a plaintiff must sufficiently allege that (1) "a constitutional right would have been violated on the facts alleged"; and (2) "the right was clearly established" at the time of the violation. *Kitchen*, 759 F.3d at 476 (quoting *Saucier*, 533 U.S. at 200). In exercising its discretion to choose which prong to address first, the Court will first consider whether Plaintiffs have alleged a violation of a constitutional right before turning to whether that constitutional right was clearly established at the time of the alleged violation. *See id.* (citing *Pearson*, 555 U.S. at 236).

        i.      *Excessive force claims*

                a.      Violation of a Constitutional Right

Plaintiffs' excessive force claims are brought against only the Officer Defendants. Doc. 46, Pls.' Am. Compl. ¶ 53. To prevail on a Fourth Amendment excessive force claim, Plaintiffs must show that Graham (1) suffered an injury, which (2) "resulted directly and only from the use of force that was clearly excessive to the need," and (3) "the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This calculus must also "embody allowance for the fact

that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Factors relevant to this analysis include: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "'Excessive force claims are [thus] necessarily fact-intensive' and 'depend[ ] on the facts and circumstances of each particular case.'" *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).

Here, the Court initially found that Plaintiffs' Original Complaint failed to allege enough facts to state an excessive force claim against the Officer Defendants. Doc. 45, Mem. Op. & Order 7. Specifically, the Court found the pleadings insufficient with regard to the third element: whether the force used was objectively unreasonable. *See id.* at 6–7. The Court noted the absence of facts regarding Graham's behavior at the time of the alleged application of force and what force the police applied; without these facts, the Court could not infer whether the force used was objectively unreasonable. *Id.* at 7.

In their Amended Complaint, Plaintiffs surmount the factual shortcomings of their previous Complaint with regard to their excessive force claim. As to the first element—whether the individual suffered an injury—Plaintiffs now specify Graham's injuries as "craniocerebral trauma"; lacerations, abrasions and hematomas to Graham's face, knees, and elbows; and bruising on Graham's hands and

hip. Doc. 46, Pls.' Am. Compl. ¶¶ 27, 29. These details allow the Court to reasonably infer that Graham suffered an injury. *See Iqbal*, 556 U.S. at 678. Regarding the second element, the Court can also infer that the alleged excessive force—punching Graham in the head, pulling his hair, and pressing down on Graham's head by an officer's foot—if true, directly caused the alleged injuries because at a minimum, it is plausible that the force applied to Graham's head directly caused the injuries to his head. *See id.*

As for the third element, whether the officers' actions were objectively reasonable, Plaintiffs insert a number of material facts about Graham's behavior and the force applied. Plaintiffs allege that prior to being handcuffed, Graham was yelling and agitated, so a police officer tased him, causing Graham to fall face-first to the ground. *Id.* ¶ 15. Once on the ground and handcuffed, Plaintiffs state that Graham briefly raised his legs in the air and lifted his head. *Id.* ¶ 16. In response, Plaintiffs continue, Graham was repeatedly tased, and an officer shifted his full weight onto Graham's head with the officer's foot. *Id.* ¶¶ 16, 20. Plaintiffs assert that Graham then walked with officers to the police car without resistance and once inside, braced his feet and legs against the interior. *Id.* ¶¶ 21–22. In response to this behavior, Plaintiffs allege, officers tased Graham again, restrained his legs, punched him, and pulled him by his hair. *Id.* ¶ 22. Graham then purportedly began to move around the back seat and scream, but he did not make any attempt to contact or harm the officers. *Id.* ¶ 23. As a result, Graham was allegedly punched in the head and repeatedly tased on the leg and testicles. *Id.*

Plaintiffs' additional facts clarify with detail the circumstances the Officer Defendants faced during the events at issue. Now Plaintiffs' allegations, taken as true, allow the Court to plausibly infer that the force used on Graham was objectively unreasonable given his alleged relatively non-

threatening behavior. Thus, because Plaintiffs' pleadings identify actions that amount to an excessive force claim violating Graham's Fourth Amendment rights, the Court continues to the second step of its qualified immunity analysis to determine whether Graham's constitutional right to be free from the kind of excessive force used against him was clearly established at the time it was used.

b. Constitutional Right was "Clearly Established"

Generally one has a constitutional right to be free from excessive force by the police. *Lytle v. Bexar Cty.*, 560 F.3d 404, 417 (5th Cir. 2009) (citing *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). But determining the extent of that right depends on the degree of force applied in light of a particular situation faced by an officer. *Id.* For the purposes of determining whether one's right to be free a specific kind of force is "clearly established" by the law, a court considers the severity of the crime faced by officers, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting or attempting to flee." *Bush*, 513 F.3d at 502 (citing *Graham*, 490 U.S. at 396). Furthermore, even if there is no binding case law ruling on the same kind of particular force at issue, the *Graham* excessive-force factors can provide the answer in an obvious case. *See Brosseau v. Hagen*, 543 U.S. 194, 198–99 (2004).

The Court concludes that the pleadings adequately demonstrate that the Officer Defendants were on notice that their behavior, in the particular situation as alleged by Plaintiffs, violated Graham's constitutional rights. *See Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (finding clearly established law put the officers on notice that they could not tase or beat the plaintiff once he stopped resisting arrest and that they could not slam the plaintiff to the ground after he was handcuffed); *Bush*, 513 F.3d at 492 (finding officers were on notice, under clearly established law, that slamming a plaintiff's face into a vehicle when she was not resisting arrest or trying to flee

violated her Fourth Amendment rights). Similar to the plaintiffs in *Anderson* and *Bush*, Plaintiffs assert that Graham was not resisting arrest or trying to flee, but nonetheless he got punched, had his hair pulled, and was repeatedly tased. Furthermore, Plaintiffs' facts indicate that Graham was not a threat to others or the officers around him. Taking Plaintiffs' allegations as true and in the light most favorable to them, they have established that the Officer Defendants were on notice that their actions would violate clearly established law.

Against the foregoing backdrop, the Court concludes that Plaintiffs have sufficiently pled facts that, if true, would establish the Officer Defendants' liability for excessive force and would also overcome the Officer Defendants' qualified immunity defense with regard to the excessive force claim. But that does not end the inquiry. Here, Plaintiffs do not supply enough facts that allow the Court to determine which of the Officer Defendants engaged in which of the alleged unlawful actions, so the Court is unable to determine which Officer Defendants, if any, might be entitled to qualified immunity. Thus, it will be necessary to turn to the next step in the Fifth Circuit's required analysis and identify the specific factual issues that must be resolved in order for the Court to conclusively rule on qualified immunity and, if necessary, issue a narrowly tailored discovery order accordingly. *See infra* Section III.A.2; *Zapata*, 750 F.3d at 485. First, however, the Court addresses the Plaintiffs' medical care claims against the Officer and Paramedic Defendants.

      *ii.*    *Denial of medical care claims*

         a.    Violation of a Constitutional Right

Under the Fourteenth Amendment, a pre-trial detainee has a "constitutional right to be secure in his basic human needs, such as medical care and safety." *Hare v. City of Corinth*, 74 F.3d

633, 647–48 (5th Cir. 1996).[20] A state official violates that right when he "act[s] or fail[s] to act with deliberate indifference to the detainee's needs."[21] *Id.* at 648. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

A plaintiff alleging deliberate indifference must show that: (1) "each defendant had subjective knowledge of 'facts from which an inference of substantial risk of serious harm could be drawn'"; (2) "each defendant actually drew that inference"; and (3) "each defendant's response to the risk indicates that [he] 'subjectively intended that harm occur.'" *Id.* (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 458–59 (5th Cir. 2001)). It is not enough that the official was negligent—only a "subjective intent to cause harm" supports a finding of deliberate indifference. *Mace v. City of Palestine*, 333 F.3d 621, 625–26 (5th Cir. 2003).

Plaintiffs allege that Paramedic Defendants Polish and Baker failed to provide Graham with necessary medical care before clearing him to be transported, and they allege that the Officer Defendants failed to provide necessary medical care at the jail after Graham was taken into custody. The Court will address each set of allegations individually.

---

[20] *Hare* involved a pretrial detainee rather than an arrestee; however, an arrestee shares the same substantive due process rights as a pretrial detainee. *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472–73 (5th Cir. 1996).

[21] The deliberate indifference standard applies to "episodic act[s] or omission[s]" of state officials. *Hare*, 74 F.3d at 646, 647. An episodic act or omission occurs when "an actor . . . is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). Plaintiffs' allegations fall within this category, so they must show that the Individual Defendants acted with deliberate indifference to Graham's medical needs.

1.      Paramedic Defendants

The Court originally found Plaintiffs' allegations against the Paramedic Defendants, Polish and Baker, to be insufficient because Plaintiffs failed to plead sufficient facts to infer that, at the scene of the arrest, Polish and Baker made an inference that there was a substantial risk of serious harm. Doc. 45, Mem. Op. & Order 8–9. Specifically, the Original Complaint lacked any detail about the head injury that Plaintiffs allege should have alerted Polish and Baker to a risk of serious harm if not immediately treated.

In their Amended Complaint, Plaintiffs provide no additional detail about the head injury. *See* Doc. 46, Pls.' Am. Compl. ¶¶ 48–52. They do add, however, that Polish and Baker were aware that Graham ingested LSD, was incoherent and screaming, and had been tased during the restraint process. *Id.* ¶ 48. From this, Plaintiffs reason that Polish and Baker knew of the substantial risk of serious harm that would result from ignoring a visible head injury or from ignoring the psychosis of someone who had ingested LSD. *Id.* ¶¶ 50–51. Plaintiffs also presume that Polish and Baker's failure to recommend sedation amounted to a violation of Graham's rights. *Id.* ¶ 49.

The Court concludes that Plaintiffs have failed to state a plausible Fourteenth Amendment claim for denial of medical care against either Polish or Baker. Plaintiffs fail to add any additional detail regarding the degree of Graham's head injury, from which the Court could infer that upon seeing such an injury, Polish and Baker should have known that there was a substantial risk of serious harm if Graham was not immediately given medical care. Furthermore, Plaintiffs' allegation that Graham's LSD-induced behavior alerted Polish and Baker to a substantial risk of serious harm is

insufficient.[22] Plaintiffs do not allege that Polish and Baker's failure to treat Graham's LSD-induced behavior even caused Graham's injuries.[23] And while they do allege that the paramedics should have recommended sedation, their reasoning is not that it would have prevented harm, but that it "would have calmed Graham down and allowed him to comply with instructions." *Id.* Thus, Plaintiffs' pleadings do not allow the Court to infer that Polish and Baker failed to provide necessary medical care after observing Graham at the scene of the arrest. Because Plaintiffs failed to allege a constitutional violation, the Court need not go further in the qualified immunity analysis with regard to Polish and Baker.

### 2. Officer Defendants

The Court initially determined that in their Original Complaint, Plaintiffs insufficiently pled a claim against the Officer Defendants for failure to provide necessary medical care. Doc. 45, Mem. Op. & Order 9. Plaintiffs failed to allege facts that would have allowed the Court to infer that the Officer Defendants subjectively knew there was a substantial risk of serious harm when faced with Graham's injuries because Plaintiffs only provided that his head injury was "obvious" and "serious." *Id.*

In Plaintiffs' Amended Complaint, presumably based upon the redacted video footage and police report, they allege that in the police car, Graham sustained blunt force head trauma because

---

[22] The Fifth Circuit has relied on the reasoning of the Fourth Circuit in that "to mandate as a matter of constitutional law that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers . . . would be a startling step to take." *Estate of Allison v. Wansley*, 524 F. App'x 963, 972 (5th Cir. 2013) (quoting *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999)). Without any more detail, Plaintiffs essentially urge the Court to reach this conclusion.

[23] This Court has previously found that a plaintiff insufficiently pled his claim of deliberate denial of medical care because he failed to illustrate that a defendant's denial of care caused him serious harm or caused his condition to worsen. *Curtis v. Mosher*, 3:12-cv-4866-B, 2014 WL 2452571 (N.D. Tex. June 2, 2014) (citing *Gilbert v. French*, 665 F. Supp. 2d 743, 758 (S.D. Tex. 2009)).

he beat his head against the cage and car door. Doc. 46, Pls.' Am. Compl. ¶ 58. Plaintiffs argue that after witnessing that behavior, the officers in the car must have drawn the inference that the symptoms from such a head injury carried a substantial risk of serious harm if not treated immediately. *Id.* After arriving at the station, Plaintiffs allege, Graham was incoherent, could not stand or walk, was unresponsive, and his head appeared to be covered in blood. *Id.* ¶ 59. And at the jail, Plaintiffs continue, Graham was unresponsive and vomiting. *Id.* Instead of seeking medical treatment, the officers allegedly restrained Graham in a chair and left him alone for over two hours before calling paramedics. *Id.* ¶ 26–27, 59. When the paramedics[24] arrived, the officers purportedly refused to unshackle Graham from the chair so that he could receive appropriate medical treatment. *Id.* ¶ 28. Because of this, the paramedics allegedly were unable to insert an oral airway into Graham. *Id.*

The Court concludes that Plaintiffs provided enough additional detail to plausibly infer that the Officer Defendants failed to provide necessary medical care. Taking Plaintiffs' allegations as true, the Officer Defendants knew that Graham was unresponsive, bloody, and vomiting, yet did not ensure that he received medical care when he arrived at the jail. This meets the standard of deliberate indifference; the substantial risk of harm from denying medical attention to a person who is unresponsive, bloody from head injuries allegedly sustained in an officer's vehicle, and vomiting would be obvious to any reasonable person, and it can be inferred that the officers knew of that substantial risk. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 842–43 (1994) (noting that a prison official's knowledge of a substantial risk of harm may

---

[24] To avoid confusion, these paramedics are not included as defendants in this case.

be inferred if the risk was obvious)).[25]

Plaintiffs have also alleged that injuries resulted: Graham suffered additional pain and later died because he was left unmonitored and untreated, and he was stopped from having an oral airway inserted by the paramedics. *See, e.g., Easter*, 467 F.3d at 464–65 (finding the plaintiff to have stated an Eighth Amendment violation with regard to severe chest pain he suffered during the period of time he was refused treatment). Thus, because Plaintiffs' pleadings identify actions that the Court can infer violated Graham's Fourteenth Amendment rights, the Court can continue to the second part of its qualified immunity analysis and determine whether Graham's constitutional right to receive medical care in light of his injuries was clearly established at the time of the violation.

### b. Constitutional Right was "Clearly Established"

The Court has already found that Plaintiffs' claims against Paramedic Defendants Polish and Baker are insufficient. *See supra* III.A.1.ii.a.1. So it need only discuss the qualified immunity defense as it applies to the Officer Defendants.

At the time of the events at issue, it was "clearly established that officials will only be liable for episodic acts or omissions resulting in the violation of a detainee's clearly established

---

[25] A number of cases have similarly found officers to have denied medical care with deliberate indifference when faced with similar injuries. In *Thompson v. Upshur County*, the Fifth Circuit denied a sergeant qualified immunity after the sergeant observed an inmate shaking, sweating, hallucinating, and colliding with objects in his cell, causing his head to bleed. 245 F.3d at 447. A court in the Southern District of Texas found a plaintiff to have sufficiently alleged a claim for denial of medical care where he pled that some officers injured plaintiff during his arrest to the point that he became unconscious and bloody, and he did not regain consciousness until he was in jail. *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 840 (S.D. Tex. 2011). Because the officers knew that the plaintiff was unconscious, but they did not ensure that he received medical care when he arrived at the jail, the plaintiff met the standard of deliberate indifference. *Id.* Another court in the Southern District of Texas found officers to have denied medical care with deliberate indifference where an officer possessed actual knowledge of the plaintiff's injuries because the officer inflicted them himself and attempted to treat the plaintiff. *O'Bryant v. Walker Cty.*, CIV. A. H-08-1880, 2009 WL 212933, at *4 (S.D. Tex. Jan. 29, 2009). The officer then ignored the plaintiff while the officer performed background checks on other people at the scene. *Id.*

constitutional rights if they 'had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.'" *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393–94 (5th Cir. 2000) (quoting *Hare*, 74 F.3d at 650)). Thus, the officers were "on notice" that denying Graham medical care violated his due process rights. *See Murray v. Earle*, 405 F.3d 278, 289 (5th Cir. 2005). Plaintiffs have alleged facts that would support the conclusion that the officers' conduct "was objectively unreasonable when applied against the deliberate indifference standard." *Jacobs*, 228 F.3d at 394.

The Court is persuaded, then, that with regard to the Officer Defendants' denial of medical care, Plaintiffs have pled specific facts that both allow the Court to "draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense." *See Backe*, 691, F.3d at 648. Having said this, Plaintiffs' Amended Complaint is still insufficient to the extent that it fails to specify which Officer Defendants engaged in which alleged actions with regard to the medical care claim. Without this information, the Court cannot resolve each Officer Defendants' qualified immunity defense.

Thus, as with the excessive force claims and the corresponding qualified immunity defenses, it will be necessary to turn to the next step in the Fifth Circuit's required analysis and identify the specific factual issues that must be resolved to conclusively rule on the qualified immunity defenses with respect to the medical care claims and then address the need for a narrowly tailored discovery order. *See Zapata*, 750 F.3d at 485. That discussion follows.

2.      Narrowly Tailored Discovery Necessary to Rule on Qualified Immunity

Above, the Court found that Plaintiffs satisfied the first part of the Fifth Circuit's "careful procedure" in that they pled facts which, if true, overcome the Officer Defendants' defense of

qualified immunity. *See Wicks*, 41 F.3d at 994. The Court, however, remains unable to rule on the Officer Defendants' immunity defense without further clarification of the facts because the facts provided do not allow the Court to analyze qualified immunity as to each individual defendant. *See Backe*, 691 F.3d at 648. As discussed above, Courts must examine each public official's actions independently to determine whether he or she is entitled to qualified immunity. *Newman,* 703 F.3d at 762 (citing *Meadours,* 483 F.3d at 421–22). While Plaintiffs recognize that they can name each Officer Defendant who was involved during the night, they cannot identify which individual engaged in what specific conduct. Doc. 46, Pls.' Am. Compl. ¶ 13. Consequently, the Court determines that the Officer Defendants' identities in relation to each action alleged— who did what that night— is a question of fact that can be resolved only with additional information through discovery. This information is essential before the Court can determine if each Officer Defendant is entitled to qualified immunity from the independent, unlawful actions alleged by Plaintiffs.

Other courts have faced a similar qualified immunity dilemmas where plaintiffs cannot identify which of several responding police officers engaged in what specific conduct without discovery. In *Khansari v. City of Houston*, the Southern District of Texas considered a case where the plaintiffs sued multiple police officers for the use of excessive force as one or more officers tasered the victim in the head, resulting in one taser to strike the victim's eye. 14 F. Supp. 3d 842, 850 (S.D. Tex. 2014). Similar to the Dyers, the plaintiffs in *Khansari* could not identify which of the officers involved actually shot a taser at the victim's head. *Id.* at 860. The court determined that at the 12(b)(6) stage of a case, "lack of such factual specificity . . . does not provide a basis on which to grant or deny defendants' motion." *Id.* at 860–61. Because the pleadings were adequate "to at least potentially state a claim, discovery may proceed on the limited issue of which of the individual

officers tasered [the victim] and whether those officers are entitled to qualified immunity." *Id.* at 861.

The Western District of Texas, likewise, considered a case where a plaintiff alleged that multiple SWAT team officers used excessive force against him during their execution of a search warrant at his home. *Crisp v. Dutton*, No. A-15-cv-0431-LY-ML, 2015 WL 7076483, at *2 (W.D. Tex. Nov. 12, 2015). Similarly at issue was the plaintiff's inability to identify, without further discovery, the names of most of the individual members of the SWAT team or specify which of the individual SWAT team officers injured him. *Id.* The court concluded that at the 12(b)(6) stage of analysis, "the threshold pleading required of a plaintiff suing multiple officers for the same event is not identification of which [d]efendant did what, but identification of actions that should reasonably have been understood as a violation of [the] [p]laintiff's rights under federal law. *Id.* at *9. Like the Dyers, the plaintiff in *Crisp* met his pleading burden, but because material fact issues remained with regard to qualified immunity the court determined that discovery was relevant and necessary to determine qualified immunity, so the court deferred ruling on the qualified immunity issue. *Id.* at *11.

Here, Plaintiffs have demonstrated that, even with their independently-obtained redacted video and police report, they cannot supply the necessary information to ascertain which of the Defendant Officers did which of the alleged unlawful acts. Compounding the problem is that Graham, the only eye-witness aside from the officers, is deceased. And despite their insistence to the contrary, the Officer Defendants' reliance on their version of events contained in their Answer is unavailing to them at this stage of the case, where the Court, to the extent plausible, must accept the Plaintiffs' version of events. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Therefore, similar to the courts in *Khansari* and *Crisp*, the Court finds that discovery is appropriate, albeit narrowly

tailored to the limited issue of which of the individual officers were involved in the specific acts of alleged excessive force and denial of medical care and whether those officers are correspondingly entitled to qualified immunity. The specific and narrow scope of that discovery will be defined, with input from the parties, at a hearing before this Court, on a date to be set shortly.[26] In the meantime, the Court does not deny but **DEFERS** its ruling on the Officer Defendants' qualified immunity defense, finding that limited discovery is necessary to resolve qualified immunity through summary judgment briefing.

That said, the Court turns to the Plaintiffs' claims against the City of Mesquite.

B.     *Plaintiffs' Claims Against Mesquite*

Mesquite, in its Motion to Dismiss (Doc. 47), argues that Plaintiffs fail to adequately plead the elements of a municipal liability claim. Doc. 48, Mesquite's Br. ¶ 2. Specifically, the City argues that the Amended Complaint fails to state any factual allegation that would support an inference of deliberate indifference by a policymaker or the existence of a policy, practice, or custom of the City that would have deprived Graham of his rights. *Id.* ¶ 6. Alternatively, the City argues that the alleged underlying constitutional violations were insufficiently pled, so municipal liability must fail. *Id.* ¶ 15. The Court need not consider the underlying claims of constitutional violations because it can reach a decision on municipal liability alone.

A claim for municipal liability under § 1983 has three elements: (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010). Municipal liability

---

[26] It seems, at a minimum, that unredacted copies of the video footage and police report are called for, but the Court will make that decision at the upcoming hearing.

requires that "an official policymaker with actual or constructive knowledge of the constitutional violation [has] acted on behalf of the municipality." *Id.* at 167. "A policymaker is 'one who takes the place of the governing body in a designated area of city administration.'" *Id.* (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). "He or she must 'decide the goals for a particular city function and devise the means of achieving those goals.'" *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

The Court held that in their Original Complaint, Plaintiffs failed to identify an official policymaker. Doc. 45, Mem. Op. & Order 11. Instead of naming one of the Defendants or a third party who acted on Mesquite's behalf, Plaintiffs simply alleged that "Mesquite" had certain policies in place. *Id.* Their Amended Complaint is no better—while Plaintiffs add additional details regarding the alleged official policy, Plaintiffs do not specify a policymaker beyond the "City" or "Mesquite." *See* Doc. 46, Pls.' Am. Compl. ¶¶ 33–46. Plaintiffs argue that they cannot establish a pattern of Mesquite's behavior because they have not been able to conduct discovery to determine if other individuals were subject to Mesquite's alleged policy of always transporting overdose arrestees to the jail instead of the hospital. Doc. 52, Pls.' Resp. 7. Plaintiffs, however, fail to address why they were unable to identify a policymaker who would have acted on Mesquite's behalf. Mesquite, in reply, points out that Plaintiffs virtually concede the inadequacy of their pleadings by insisting on more discovery rather than addressing Mesquite's arguments. Doc. 53, Defs.' Reply ¶ 3.

In sum, Plaintiffs failed to point to a policymaker who would have acted on Mesquite's behalf. So the Court cannot infer that Mesquite might be held liable under § 1983. Thus, the Court

**GRANTS** Mesquite's Motion to Dismiss (Doc. 47) all of Plaintiffs' claims against the City.[27]

C.    *Plaintiffs' Personal Claims*

Plaintiffs also bring two claims on their own behalf: (1) interference with parent-child relationship and (2) wrongful death. Doc. 46, Pls.' Am. Compl. ¶¶ 62, 63–64.

1.    Interference with Parent-Child Relationship

The Court previously found that Plaintiffs insufficiently pled their interference with a parent-child relationship claim in their Original Complaint. Doc. 45, Mem. Op. & Order 13–14. In particular, the Court found that Plaintiffs failed to allege that Defendants "purposefully interfered" with the parent-child relationship. *Id.* at 14. Plaintiffs' Amended Complaint is the same on this point. *See* Doc. 46, Pls.' Am. Compl. ¶ 62. As Plaintiffs fail to add any additional facts, the interference with a parent-child relationship claim remains insufficient. Thus, the Court **GRANTS** Officer and Paramedic Defendants' Motion to Dismiss (Doc. 49) with regard to this claim.

2.    Wrongful Death Claims

The Court previously found that Plaintiffs' claim for wrongful death, which was based on a violation of Graham's civil rights, failed because their Original Complaint did not sufficiently allege a violation of Graham's civil rights.[28]

"[A] parent may recover damages analogous to state law wrongful death damages in a § 1983 action based on the violation of her child's civil rights." *Flores v. Cameron Cty.*, 92 F.3d 258, 271 (5th Cir. 1996); *Rhyne v. Henderson Cty.*, 973 F.2d 386, 391 (5th Cir. 1992). The Texas Civil Practice and

---

[27] The claims against the City are Plaintiffs' municipal liability claims; the Fourth, Eighth, and Fourteenth Amendment claims as brought against the City; and Plaintiffs' personal claims as brought against the City.

[28] Doc. 45, Mem. Op. & Order 15.

Remedies Code provides that only "the surviving spouse, children, and parents of the deceased" may bring an action to recover damages for wrongful death. Tex. Civ. Prac. & Rem. Code § 71.004 (West, Westlaw through 2015 Sess.).

Here, the Court has found that Plaintiffs have pled specific facts that allow the Court to infer that the Officer Defendants are liable for the harm alleged and that defeat a qualified immunity defense with regard to their allegations that Graham's civil rights were violated. Thus, Plaintiffs have remedied the shortcomings addressed by the Court in their prior Original Complaint as to their wrongful death claim. The Court, then, concludes that Plaintiffs' wrongful death claim survives the Court's 12(b)(6) analysis.[29] And the Officer and Paramedic Defendants' Motion to Dismiss this claim (Doc. 49) is **DENIED.**[30]

## IV.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** the Paramedic Defendants' portion of the Motion to Dismiss (Doc. 49) and **DISMISSES** all of the claims against them **with prejudice**. With regard to the Officer Defendants, the Court **DEFERS RULING**[31] on their portion of the Motion to Dismiss (Doc. 49) as to the excessive force claims, denial of medical care claims, and their

---

[29] Of course, because it is derivative of their civil rights claims, the Plaintiffs' wrongful death claim may be eliminated if the Officer Defendants' qualified immunity defenses as to the civil rights claims are successful on summary judgment.

[30] Denying this portion of the Officer and Paramedics' Motion to Dismiss is of no moment to the Paramedic Defendants as they are dismissed from the case with prejudice, as addressed.

[31] Although the Court "defers ruling" on this portion of the Officer Defendants' Motion to Dismiss, because the Court will reconsider the Officer Defendants' arguments and claims of qualified immunity on summary judgment and not through the pending Motion to Dismiss (Doc. 49), the Clerk of Court is directed to terminate both Documents 47 and 49.

corresponding assertions of qualified immunity as to those claims, pending limited discovery and later reconsideration on summary judgment. The Court **GRANTS** Officer Defendants' portion of the Motion to Dismiss (Doc. 49) with regard to the Dyers' claim for interference with a parent-child relationship. Lastly, the Court **GRANTS** Mesquite's Motion to Dismiss (Doc. 47) in its entirety and **DISMISSES** all of the Plaintiffs' claims against Mesquite **with prejudice**.

SO ORDERED.

SIGNED: January 12, 2017.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE