IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHY DYER and ROBERT DYER, | § | |
| Individually and as Representative of the | § | |
| Estate of Graham Dyer, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Cause No. 3:15-CV-02638-B |
| | § | |
| JACK FYALL, RICHARD HOUSTON, | § | |
| ALAN GAFFORD, ZACHARY SCOTT, | § | |
| WILLIAM HEIDELBURG, and BILL | § | |
| HEDGPETH, | § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
BY DEFENDANTS FYALL, HOUSTON, GAFFORD, SCOTT, HEIDELBERG
& HEDGPETH**

**TABLE OF CONTENTS**

Summary……………………………………………………………………………2

Standard of Review………………………………………………………………3-5

Qualified Immunity Standard……………………………………………………5-7

4th Force Amendment Claim………...……………………………………………7-8

Medical Inattention Claim………………………………………………………8-10

Individual Defendants…………………………………………………………..10-18

Conclusion………………………………………………………………………18

Certificate of Service…………………………………………………………….19

Table of Authorities………………………………………………………………19-20

COME NOW Defendants Fyall, Houston, Gafford, Scott, Heidelberg[1] and Hedgpeth ("Defendants") who make and file this Brief in Support of their Motion for Summary Judgment. For same, Defendants would state the following:

1.  <u>Summary</u>:[2]         Plaintiffs assert causes of action for deprivation of decedent's right to be free from excessive force under the Fourth Amendment and deprivation of decedent's right to medical attention as a pre-trial detainee under the Fourteenth Amendment pursuant to 42 USC §1983.[3]  It is undisputed that, at the time of the encounter, and now,[4] these Defendants were public officials for the City of Mesquite, Texas, and acting under color of law at all pertinent times. This case arises from an arrest of Plaintiffs' decedent, Mr. Dyer, late in the evening on August 13th, 2013, in Mesquite, Texas, and his subsequent death occurring during the early morning hours on the following date.  The claim of excessive force presents the objective question of whether the force employed was reasonable and necessary "in light of the facts and circumstances confronting" the officers.[5]  On the medical claim, Plaintiffs must establish that an official (here, <u>each</u> Defendant officer) "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."[6]    Deliberate indifference requires that the officer must have subjective <u>intent to cause harm</u>.[7]

---

[1] Mis-named herein as "Heidelburg".

[2] Local Rule 56.3.a.1.

[3] *See*, Plaintiff's Amended Complaint, pp. 13, 15.  Former Defendants City of Mesquite, Polish and Baker were dismissed from this action as were Plaintiffs' claims for an alleged deprivation under the 8th Amendment and Plaintiffs' individual due process claims.   Although the amended complaint appears to have pleaded a medical inattention claim only as to former Defendants Polish and Baker rather than these Defendants, (*See*, Amended Complaint, pp. 11-13.) said claim is addressed herein out of caution.

[4] Except for Defendant Hedgpeth who has since retired.

[5] *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

[6] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).

[7] *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

2.      Standard of review:    Summary judgment is appropriate if the record before the Court shows that there is no genuine issue of material fact.[8]  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[9]   Such a showing entitles movants to summary judgment as a matter of law.[10]   A moving party need not support its motion with affidavits or other evidence negating the non-movant's claim.[11]   The threshold inquiry is whether there are "any genuine [and material] factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12]   "[T]he substantive law will identify which facts are material."[13]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party on that fact issue.[14]   The burden initially is upon the moving party to identify the evidence on file in the case that demonstrates the absence of any genuine issue of material fact.[15]   To prevail on a 'no-evidence' motion for summary judgment, "the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."[16]

3.      Once movant sustains this initial burden, the opposing party must then present sufficient admissible evidence to create a genuine issue of material fact.[17]   The non-movant in a

---

[8] Fed. R. Civ. P. 56(c); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *Turner v. Houma Municipal Fire and Police Civil Service Board*, 229 F.3d 478, 482 (5th Cir.  2000).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[10] Fed.R.Civ.P., Rule 56(c).

[11] *Celotex Corp. v. Catrett*, *supra* at 322.

[12] *Anderson v. Liberty Lobby, Inc.*, *supra* at 251.

[13] *Id.* at 248.

[14] *Id.; Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999).

[15] *Celotex Corp. v. Catrett*, *supra* at 323.

[16] *Douglas v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1429 (5th Cir. 1996) (emphasis added).

[17] *Id.* at 322-325.

summary judgment proceeding may not rest upon mere conclusory allegations or denials of the pleadings – non-movant must set forth specific facts showing a genuine issue for trial.[18]

4.    Plaintiff must present more than "some metaphysical doubt as to the material facts" in order to rebut a valid motion for summary judgment.[19]   In other words, Plaintiff must go beyond the pleadings and designate specific facts showing the existence of a genuine issue of material fact for trial.[20]  Non-movants may not rest upon the allegations in their pleadings[21] and "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or 'only a scintilla of evidence.'"[22] Unsubstantiated assertions are not competent summary judgment evidence.[23]  To fulfill their burden, Plaintiffs must "identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[24]    Evidence not so specified is not properly before the Court on the summary judgment proceedings.[25]   Judgment is required when a party fails to establish the existence of an essential element of his case on which that party will bear the burden of proof at trial.[26]   On this record, Plaintiffs cannot establish the essential

---

[18] *Id.*; and Fed.R.Civ.P. 56(e).  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir. 1995).; *See also, Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994) (non-movant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].").

[19] *Matsushita Elec. Indus Co. v. The Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

[20] *Id.*

[21] *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. den*. 488 U.S. 926 (1988).

[22] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham, 447 F.App'x* 549, 551 (5th Cir. 2011), *Douglass v. United Servs. Auto. Ass'n*, *supra.*

[23] *Little v. Liquid Air Corp., supra; Forsyth v. Barr*, 19 F. 3d 1527, 1533 (5th Cir.), *cert denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

[24] *Ragas v. Tenneessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994);  See, *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 916 (5th Cir.), *cert. den.* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). *See also*, Local Rule 56.

[25] *Ragas, supra, Skotak, supra.*,

[26] *Celotex Corp. v. Catrett*, 477 U.S. at 322-324; *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

elements of their claim in the following manner:  The actions of each individual officer regarding use of force and alleged inattention to medical needs was such that a reasonable officer in the shoes of each Defendant could have believed that their actions were lawful and consistent with the preservation of decedent's legal rights.  Further, the record lacks support on the causation element. As set forth below, summary judgment is appropriate in this case because there is no genuine issue of material fact as to the qualified immunity of Defendants.

5.     The qualified immunity standard:   Qualified immunity is a defense available to public officials sued in their individual capacities.   The defense "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[27]  Plaintiffs must establish that no reasonable official could have believed the actions of each Defendant were lawful.[28]   It is Plaintiffs who bear the burden of proof on the issue of qualified immunity.[29]

6.     Determining a public official's entitlement to qualified immunity involves a multi-step inquiry, the first of which is determination of whether Plaintiffs have sufficiently presented the violation of a clearly established constitutional right.[30]   Then, a determination must be made as to whether the right allegedly violated was clearly established *under the specific circumstances confronting each official.*[31]   The analytical framework (the order in which the questions may be addressed by the Court) to be applied to a qualified immunity defense has been relaxed by the

---

[27] *See, Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009); (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 201 S.Ct. 2727 (1982)); *Goodman v. Harris Co.*, 571 F.3d 388, 395 (5th Cir. 2009).

[28] *Sorenson v. Ferrie, infra,* n. 24.

[29] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008);  *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir.  2005) (quoting *Roberts v. City of Shreveport,* 397 F.3d 287, 291 (5th Cir.  2005));  *See, McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).

[30] *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[31] *Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Sorenson v. Ferrie*, 134 F.2d 325, 328 (5th Cir. 1998).

Supreme Court in the *Pearson* opinion.[32]   However, the substantive aspects of the qualified immunity analysis remain unchanged.   Further, Plaintiffs must establish that <u>no</u> reasonable official in the shoes of <u>each</u> Defendant could have believed that the actions taken were consistent with the preservation of the legal rights asserted.[33]   Indeed, the Court is prohibited from considering the alleged actions of the individual Defendants collectively for purposes of the qualified immunity analysis.[34]   Thus, the relevant inquiry is whether the alleged conduct of <u>each</u> official in question was objectively reasonable under the circumstances with which <u>each</u> official was confronted.

7.     Even if Plaintiffs present a clearly established right, more is required to overcome the immunity.   Plaintiffs must present facts which, if true, establish that <u>no</u> reasonable official in the shoes of <u>each</u> Defendant could have believed that the actions taken by <u>each</u> official, *in the circumstances confronting that particular Defendant*, were consistent with the pleaded legal rights.[35]   *If reasonable officials could differ on the legality of a defendant's actions*, then qualified immunity is a bar to liability and to suit.[36]   In order to hold a Defendant-official's actions to be objectively <u>un</u>reasonable, Plaintiffs bear the burden to establish that *all* reasonable officials in the shoes of the Defendant in question would have known at the time that the alleged actions of the particular Defendant deprived Plaintiffs' decedent of the Constitutional right in question.[37]   The Fifth Circuit recently clarified this standard by holding that Plaintiffs have the burden of showing

---

[32] *Pearson v. Callahan*, 555 U.S. 223, 128 S.Ct. 1702 (2009).

[33] *Pratt v. Harris Co*., 822 F.3d 174, 181 (5ᵗʰ Cir.) (*cert den*. 137 S.Ct. 1121, 2017); *Meadours v. Ermel*, 483 F.3d 417, 421 (5ᵗʰ Cir. 2007); *Jacobs v. West Feliciana Sheriff's Department,* 228 F.3d 388, 395 (5th Cir.2000); *Sorenson v. Ferrie*, 134 F.3d 325 (5ᵗʰ Cir. 1998).

[34] *Meadours, supra*.

[35] *See, Graham v. Conner*, 490 U.S. 386 (1989)*;  Sorenson v. Ferrie, supra*.

[36] *Pfannsteil v. City of Marion,* 918 F.2d 1178, 1183 (5ᵗʰ Cir. 1990).

[37] *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5ᵗʰ Cir. 2002).

that the illegality of the officers' actions is "beyond debate"[38] thus confirming the notion that Plaintiffs must present sufficient specific evidence of circumstances under which no reasonable official could have believed the alleged conduct was lawful.  Plaintiffs do not overcome qualified immunity by merely alleging "that a violation *arguably* occurred." [39]

8.     This record does not contain sufficient evidence to establish circumstances which would overcome the qualified immunity of the individual Defendants herein.   Furthermore, the evidence presented by Defendants establishes that a reasonable officer in the shoes of each Defendant could have believed that each Defendant's actions were lawful and consistent with the preservation of decedent's rights to be free from excessive force and to receive attention to serious medical needs.  Therefore, Plaintiffs' claims herein are barred by qualified immunity.

9.     The Fourth Amendment Force Claim:   Plaintiffs assert an excessive force claim under the Fourth Amendment to the U.S. Constitution.[40]   The claim of excessive force presents the objective question of whether the force employed was reasonable and necessary "in light of the facts and circumstances confronting" the officers.[41]   To establish a claim for excessive force, Plaintiffs must present evidence of an injury resulting directly and only from the use of force that was clearly excessive to the need.[42]  This record fails to establish an injury resulting only from an alleged excessive use of force and the record clearly indicates that decedent contributed to his own

---

[38] *Morgan v. Swanson*, *et. al.,* 659 F.3d 359, 371 (5th Cir.  Sept. 27th, 2011) (en banc).
[39] *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir.), *cert den.* 135 S.Ct. 1492 (2015) (quoting *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 (5th Cir. 1989)) (emphasis in original).
[40] Complaint, p. 13.
[41] *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).
[42] *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996); *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989)(*en banc)*; and *Knight v. Caldwell*, 970 F.2d 1430, 1433-1434 (5th Cir. 1992).  *See also*, *Fontenot v. Cormier*, 56 F.3d 669 (5th Cir. 1995).

injury by beating his own head against the interior of the police car[43] and possibly by actions prior to encountering the officers.[44]   This record lacks evidentiary support of this causation element.[45]

   10.   <u>The medical inattention claim:</u>      The crux of Plaintiffs' claim is an allegation that decedent died due to inattention to medical needs.   This is clearly a claim of an episodic act or omission[46] rather than a condition of confinement claim; thus, deliberate indifference is the applicable standard of fault.[47]   In the context of medical care, officials violate the 14th Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs.[48]   The standard of deliberate indifference is a stringent one.   Plaintiffs must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[49]   Mere disagreement with medical treatment or unsuccessful treatment does not constitute deliberate indifference, absent exceptional circumstances.[50]   Here, decedent was examined by paramedics and Plaintiffs take issue with the results of that examination.   In order to present a cognizable claim under this theory and support an inference of deliberate indifference, Plaintiffs must establish facts which establish that an official (here, <u>each</u> Defendant officer) "knows of and disregards an

---

[43] App. at 12.

[44] Gafford observed a bump on Mr. Dyer's head when first encountering him (Gafford Affidavit, app. at 7) and others testify that he was banging his head prior to the arrest that night.  McDonald affidavit, app. at 44; Stowater affidavit, app. at 45.

[45] *See,* nn. 16, 19-24, *supra*.

[46] *Brown v. Strain*, 663 F.3d 245 (5th Cir. 2011).

[47] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996) (*en banc*).

[48] *Id*, at. 647-48.  This is the same standard of deliberate indifference which applies to medical inattention under the 8th Amendment. *Id*. at 643.   Thus, cases deciding deliberate indifference issues under the 8th Amendment are applicable to the instant analysis.

[49] *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks and citation omitted).

[50] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[51]   Deliberate indifference requires that <u>each</u> officer must have subjective <u>intent to cause harm</u>.[52]   Mere negligence is insufficient to meet the standard.[53]   The evidence in this record clearly establishes that none of the officers were aware of, or inferred, any serious injury and no officer's conduct meets the standard of deliberate indifference which is an element of this claim.

11.   Defendants tender in support of their Motion for Summary Judgment the testimony and report of expert Clint McNear.[54]   Mr. McNear has decades of experience in the field of police work and training.   His experience, education and training – as reflected by his resume – renders him qualified to render opinions herein on procedures and actions taken by the Defendant officers related to the arrest and detention of Mr. Dyer.   Mr. McNear's superior expertise in these areas renders his opinions helpful to a finder of fact in this matter.[55]   Mr. McNear's credentials (his many years as a police officer, his training, his education, his experience as a trainer[56]) clearly render him to be a "reasonable officer".   After reviewing this matter, Mr. McNear believes the conduct of each officer was reasonable and lawful.[57]   Therefore, Plaintiffs will be unable to fulfill their

---

[51] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).
[52] *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).
[53] *Hare v. City of Corinth, Miss., supra* at 645.
[54] App. at 22-42.
[55] *See, Watkins v. New Castle County*, 374 F.Supp.2d 379, 392 (2005) ("…experience and training as a police officer of 22 years qualifies him to render an expert opinion on police training, methods, and policies as well as the clinical signs and dangers of excited delirium…")
[56] App. at 33-42.
[57] *Id.* at 24-31.

burden to establish that <u>no</u> reasonable officer could have believed Defendants' conduct to be lawful.[58]

INDIVIDUAL DEFENDANTS

12.   <u>Defendant Fyall</u>:       Officer Fyall was the last of the five officers to arrive at the arrest scene and Mr. Dyer was already restrained by the other officers upon Fyall's arrival.[59]   Fyall and the other officers restrained Mr. Dyer at the scene[60] and, after being cleared by the paramedics, began to load Mr. Dyer into a police vehicle for transport.[61]   During the loading process, Mr. Dyer bit into Officer Fyall's finger causing Officer Fyall to punch Mr. Dyer in the side to get Mr. Dyer to release the bite.[62]   As the officers were attempting to load Mr. Dyer into the back seat of the police vehicle, Mr. Dyer was kicking the officers including Officer Fyall.[63]   Officer Fyall deployed his taser in a drive stun mode to overcome this resistance and stop the kicking.[64]   Mr. Dyer was then transported from the scene and Officer Fyall had no further contact with him.[65]   The use of force by Officer Fyall was limited to helping restrain Mr. Dyer at the scene of the arrest; punching Mr. Dyer in the side to get him to release the bite; and, drive stunning Mr. Dyer to overcome the kicking during the vehicle loading.   There is nothing in this record to indicate any injury resulted from any action or use of force by Officer Fyall.   Given the circumstances confronting Officer Fyall, a reasonable officer could clearly believe that Fyall's limited uses of force to restrain Mr. Dyer and to prevent the assaults was lawful under these circumstances.   The expert McNear, an

---

[58] *See*, argument and authority in paragraph 7, *supra*.
[59] App. at 1.
[60] *Id*. at 2, 7, 11, 15, 18-19.
[61] *Id*. at 2.
[62] *Id*.
[63] *Id*.
[64] *Id*.
[65] *Id*.

experienced police officer, concurs.[66]   During Fyall's presence at the arrest scene, he observed paramedics checking Mr. Dyer and Fyall observed no injury or mechanism of injury to Mr. Dyer.[67] Thus, there was no action or inaction by Officer Fyall related to the inattention to medical needs claim.

13.   <u>Defendant Houston:</u>   Officer Houston was the second officer on the scene of the arrest of Mr. Dyer and observed Mr. Dyer screaming, thrashing and kicking and further observed Mr. Dyer to be clearly intoxicated.[68]   Officer Houston immediately handcuffed Mr. Dyer.[69] Officer Houston and the other officers restrained Mr. Dyer by placing their hands and feet on and around Mr. Dyer to pin him to the soft ground.[70]   At the detention facility, Officer Houston observed Mr. Dyer tensing up and struggling as he was restrained by other officers.[71]   The limited force applied by Officer Houston to handcuff and restrain Mr. Dyer was clearly reasonable under the circumstances (thrashing, physical actions of Dyer)[72] and there is no indication in this record of any such force causing injury to Mr. Dyer.

14.   Paramedics were called to the scene immediately after handcuffing by Officer Houston because Officer Houston mistakenly believed Mr. Dyer had been tased and because of Mr. Dyer's intoxicated condition.[73]   Officer Houston never observed an injury to Mr. Dyer and understood the paramedics to have medically cleared Mr. Dyer for arrest.[74]   While Mr. Dyer was

---

[66] *Id*. at 29.
[67] *Id*. at 2-3.
[68] *Id*. at 15.
[69] *Id*.
[70] *Id*.
[71] *Id*. at 16.
[72] See, Id. at 29.
[73] *Id*. at 15.
[74] *Id*.

in Officer Houston's presence that evening, Mr. Dyer's condition and actions never changed.[75] Thus, there would have been no reason for calling paramedics to check Mr. Dyer a second time. Accordingly, Officer Houston observed no indication of a serious medical need and therefore could not have disregarded same.

15.    <u>Defendant Scott</u>:       Officers Scott and Heidelberg arrived at the arrest scene after Mr. Dyer had been handcuffed and was in the custody of Officers Houston and Gafford.[76]   Officer Scott and other officers restrained Mr. Dyer as Mr. Dyer was screaming and thrashing about on the ground.[77]   After Officer Scott checked Mr. Dyer for weapons and retrieved a wallet and cell phone, paramedics cleared Mr. Dyer for arrest.[78]   Officer Scott restrained Mr. Dyer by holding his head and hair as Mr. Dyer fought being loaded into the police vehicle by kicking other officers.[79] While the officers were driving to the detention facility, Officer Scott observed Officer Heidelberg (the officer transporting Mr. Dyer) stop his vehicle and Officer Scott also stopped to assist.  During that stop, Officer Scott again restrained Mr. Dyer in the back seat of the vehicle by holding his head and upper body as Mr. Dyer continued thrashing and kicking at other officers who were attempting to check his restraints and re-load him into the vehicle.[80]   During this time, Officer Scott used harsh language out of frustration and as an attempted control tactic.[81]   At the detention facility, Officer Scott assisted other officers in removing Mr. Dyer from the vehicle, restraining him and carrying him to a restraint chair.[82]   During that process, Mr. Dyer continued to thrash

---

[75] *Id.* at 16.
[76] *Id.* at 18.
[77] Id. at 19, 15.
[78] *Id.* at 19.
[79] *Id.*
[80] *Id.* at 19.
[81] *Id.*
[82] *Id.*

about and attempt to wriggle free, but was restrained from doing so.[83]  Mr. Dyer's assaultive

conduct continued as he spit at jail officers during this time.[84]  This record lacks any evidence of

any injury having been caused by any action of Officer Scott.  Thus, the actions of Officer Scott

in restraining Mr. Dyer to prevent possible escape and assaults on other officers were clearly

reasonable under these circumstances and a reasonable officer could have so believed as does the

law enforcement expert – Mr. McNear.[85]

      16.     Officer Scott observed a minor knot on Mr. Dyer's head at the scene of the arrest,

but it did not appear serious.[86]  Officer Scott was aware that paramedics checked Mr. Dyer and

cleared him for arrest.[87]  Officer Scott deferred to the paramedics' superior medical training to

assess the prisoner.[88]  During the entire evening, Officer Scott never observed any change in Mr.

Dyer's demeanor or physical condition and never observed an indication of serious injury.[89]  Thus,

Officer Scott would have had no reason to believe medical assistance should have been summoned

a second time and had no reason to believe a serious medical need existed on the part of Mr. Dyer.

      17.     <u>Defendant Gafford</u>:   Officer Gafford was the first officer to encounter Mr. Dyer

on the evening of the arrest.   Mr. Dyer charged Officer Gafford aggressively, but immediately

went to ground as Officer Gafford attempted to deploy his Taser (which malfunctioned and never

properly deployed).[90]  Apparently, Mr. Dyer reacted to the noise of the Taser and fell to the ground

---

[83] *Id.*
[84] *Id.*
[85] *Id.* at 29.
[86] *Id.* at 19.
[87] *Id.*
[88] *Id.* at 19-20.
[89] *Id.* at 20.
[90] *Id.* at 7

anyway.[91]  Officer Houston then arrived and attempted to calm Mr. Dyer while handcuffing him.[92]

Paramedics were called after Mr. Dyer was handcuffed.[93]  Mr Dyer continued to scream, kick and

thrash about on the ground during the incident requiring officers – including Officer Gafford – to

restrain him by pinning him to the ground which was soft from recent rain.[94]  The paramedics

indicated they would not transport Mr. Dyer indicating to Officer Gafford that Mr. Dyer was

cleared for arrest.[95]  Officers, including Officer Gafford then escorted Mr. Dyer to a police vehicle

for transport whereupon Mr. Dyer began fighting the officers' efforts.[96]  This consisted of biting

and kicking the officers.[97]  Mr. Dyer was finally restrained in the police vehicle using leg restraints

in addition to handcuffs.[98]  During the drive to the detention facility, Officer Gafford observed the

vehicle containing Mr. Dyer to be rocking back and forth.[99]  Officer Heidelberg stopped and the

officers opened the back door to determine if Mr. Dyer had slipped his restraints.[100]  Mr. Dyer

appeared to attempt to exit the vehicle at that time.[101]  As the officers worked to restrain Mr. Dyer,

re-apply the leg restraints and convince him to stop thrashing and kicking, Officer Gafford applied

his Taser in a drive stun mode in attempt to stop the resistance.[102]  Although Officer Gafford's

visibility was quite limited due to darkness, Officer Gafford applied his taser in a drive stun mode

to Mr. Dyer's upper inner thigh.[103]  At the detention facility, Officer Gafford assisted other officers

---

[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.* at 7, 15.
[95] *Id.* at 8.
[96] *Id.*
[97] *Id.*
[98] Id.
[99] *Id.*
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.*

carrying Mr. Dyer inside.[104]   The screaming, kicking and thrashing continued during this time.[105] This record lacks any indication that any actions of Officer Gafford caused any injury.   A reasonable officer could have believed Gafford's actions were lawful in response to the substantial resistance of a combative suspect.[106]

18.    Officer Gafford never observed any injury to Mr. Dyer other than the minor contusion on the forehead.[107]   Officer Gafford observed Mr. Dyer be examined and cleared by paramedics.[108]  Subsequently there was no change in Mr. Dyer's condition.[109]  Officer Gafford observed no action by any officer which might have cause an injury to Mr. Dyer at any time that evening.[110]   Thus, Officer Gafford had no reason to believe Mr. Dyer suffered from a serious medical need during the encounter.

19.    Defendant Heidelberg:       When Officer  Heidelberg arrived on the scene of the arrest, Mr. Dyer was already handcuffed and detained by Officers Houston and Gafford.[111]   Officer Heidelberg assisted other officers in restraining Mr. Dyer who was screaming, kicking, thrashing and rolling around on the ground.[112]  The restraint by the officers consisted of pinning Mr. Dyer to the soft ground.[113]  After being cleared by the paramedics, Mr. Dyer was loaded by the officers into Officer Heidelberg's vehicle.[114]  Officer Heidelberg observed that the officers had to fight Mr.

---

[104] *Id*. at 8, 9.
[105] *Id*. at 9.
[106] *Id*. at 29.
[107] *Id*.
[108] *Id*. at 8.
[109] *Id*. at 9.
[110] *Id*.
[111] *Id*. at 11.
[112] *Id*.
[113] *Id*., 11, 15
[114] *Id*. at 11

Dyer and overcome his resistance to get him loaded.[115]   During the drive to the detention facility, Mr. Dyer was thrashing about in the rear seat of the police vehicle and Officer Heidelberg became concerned that Mr. Dyer has slipped his restraints and might escape or injury himself, so Officer Heidelberg stopped to assess the situation.[116]   Mr. Dyer appeared to try to lunge out of the vehicle as the officers opened the back door to check on him.[117]   The officers had to re-set the leg restraints and tried to calm Mr. Dyer.[118]   At the detention facility, Officer Heidelberg was present while Mr. Dyer was restrained and carried inside.[119]   Officer Heidelberg observed Mr. Dyer thrashing about and attempting to wriggle free, although he was prevented from doing so by restraining officers.[120] The record establishes that the only force applied to Mr. Dyer by Officer Heidelberg was to restrain Mr. Dyer in response to violent resistance to arrest and detention.[121]   This record lacks any evidence that any injury was caused by any action of Officer Heidelberg.  A reasonable officer in Officer Heidelberg's shoes could have clearly believed this was lawful.[122]

20.     At the arrest scene, Officer Heidelberg observed an abrasion on Mr. Dyer's head which did not appear to be serious.[123]   Officer Heidelberg observed Mr. Dyer being checked and cleared by paramedics.[124]   Officer Heidelberg never observed any change in Mr. Dyer's physical or medical condition after that time.[125]   Thus, a reasonable officer in Officer Heidelberg's shoes

---

[115] *Id.*
[116] Id. at 12.
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] *Id.*
[121] *Id.* at 11-13.
[122] *Id.* at 29.
[123] *Id.* at 11.
[124] *Id.*
[125] *Id.* at 13

could have believed that no serious medical needs of Mr. Dyer were disregarded by Officer Heidelberg.

21.    <u>Defendant Hedgpeth</u>:          Retired Officer Hedgpeth was not present, was not on duty and was not involved in the arrest or detention of Mr. Dyer.[126]  Officer Hedgpeth did not supervise the officers involved with Mr. Dyer.[127]  Officer Hedgpeth merely wrote up the jail death press release after the fact.[128]  In fact, Officer Hedgpeth was home, asleep in bed, when Mr. Dyer was arrested and detained.[129]    Accordingly, a reasonable officer could believe that Officer Hedgpeth's actions (which were none) related to the Dyer incident were lawful and qualified immunity bars the claims against Hedgpeth.

22.    Plaintiffs may argue that the officers' failure to seat belt Mr. Dyer in the transporting police vehicle somehow contributed to his death.   This is a red herring.   Plaintiffs' argument is expected to be that Mr. Dyer would have been unable to bang his head on the interior of the vehicle if he had been belted.   Notwithstanding the testimony of the officers and expert that seat belting a combative prisoner is not done for officer safety reasons, [130] the use of the seatbelt would not have prevented Mr. Dyer from his violent actions in the back seat of that squad car. This issue was examined by the expert McNear who demonstrated that the seat belt does not restrain a person except in collisions and hard stops.[131]   Otherwise, the person belted is free to move about.[132]   The video attached to McNear's report and affidavit demonstrates that a person

---

[126] *Id*. at 4.
[127] *Id*. at 5.
[128] *Id*.
[129] *Id*.
[130] *Id*. at 8, 11, 30.
[131] *Id*. at 30.
[132] *Id*.

Brief in Support of Individual Defendants' Motion for Summary Judgment. No. 3:15-CV-02638-B.   Page 17

handcuffed and seat belted can still move about a back seat and strike their head on the interior of the vehicle.[133]

23.     Accordingly, a reasonable officer in the shoes of each Defendant officer herein could have believed that each officer's actions were lawful and consistent with decedents right to be free from excessive force and right to receive attention for serious medical needs as a pre-trial detainee.   Therefore, the claims against these Defendant officers are barred by qualified immunity.

24.     Conclusion:    For the foregoing reasons, Defendants move for summary judgment as to Plaintiffs' remaining claims pursuant to F.R.C.P. 56 as there is no genuine issue of material fact on this record as to each Defendant's qualified immunity from such claims.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray that they go hence without day and recover costs, including reasonable attorney's fees, in this behalf expended. Defendants further pray for such other and further relief, both general and special, to which they may be justly entitled.

Respectfully submitted,

By:    **/s/ Joe C. Tooley**
State Bar No. 20129750
State Bar No. 20129750
510 Turtle Cove, Suite 112
Rockwall, Texas 75087
(972) 722-1058
(972) 722-1070 (Facsimile)
Joe@TooleyLaw.com

ATTORNEY FOR DEFENDANTS
FYALL, SCOTT, HOUSTON, GAFFORD,
HEIDELBERG and HEDGPETH

---

[133] *Id.* 32.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure, as modified by this Court's ECF Orders, on this 05th day of September, 2017.

<u>**/s/ Joe C. Tooley**</u>

<u>**TABLE OF AUTHORITIES**</u>

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, (1986) ................................................ 3
*Brown v. Strain*, 663 F.3d 245 (5th Cir. 2011) ............................................................. 8
*Brumfield v. Hollins*, 551 F.3d 322, (5th Cir. 2008) ..................................................... 5
*Carnaby v. City of Houston*, 636 F.3d 183, (5th Cir. 2011) ......................................... 3
*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986) ............................... 3,4
*Club Retro LLC v. Hilton*, 568 F.3d 181, (5th Cir. 2009)............................................. 5
*Connelly v. Comptroller of the Currency*, 876 F.2d 1209, (5th Cir. 1989) .................. 7
*Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002) ........................... 6
*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, (5th Cir. 2001)................. 8
*Douglas v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, (5th Cir. 1996) .......................... 5
*Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, (5th Cir.  2005)........... 5
*Evans v. Ball*, 168 F.3d 856, (5th Cir. 1999) .............................................................. 5
*Farmer v. Brennan*, 511 U.S. 825, (1994). .............................................................. 2,9
*Fontenot v. Cormier,* 56 F.3d 669 (5th Cir. 1995)...................................................... 7
*Forsyth v. Barr*, 19 F.3d 1527, (5th Cir.), 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). 4
*Gobert v. Caldwell*, 463 F.3d 339, (5th Cir. 2006) ..................................................... 8
*Goodman v. Harris Co.*, 571 F.3d 388, (5th Cir. 2009)................................................ 5
*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).......................... 2,6,7
*Hare v. City of Corinth, Miss.*, 74 F.3d 633, (5th Cir. 1996)........................................ 8
*Harlow v. Fitzgerald*, 457 U.S. 800, 201 S.Ct. 2727 (1982) ...................................... 5
*Hathaway v. Bazany*, 507 F.3d 312, (5th Cir. 2007) .................................................. 4
*Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, (5th Cir. 1995) ................................... 4
*Ikerd v. Blair*, 101 F.3d 430, (5th Cir. 1996) .............................................................. 7
*Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, (5th Cir.), 488 U.S. 926 (1988) ................. 4
*Jacobs v. West Feliciana Sheriff's Department,* 228 F.3d 388, (5th Cir.2000)............................ 6
*Johnson v. Morel*, 876 F.2d 477, (5th Cir. 1989)........................................................ 7
*Kipps v. Caillier,* 197 F.3d 765, 768 (5th Cir. 1999).................................................... 3
*Knight v. Caldwell*, 970 F.2d 1430, (5th Cir. 1992) .................................................... 7

*Little v. Liquid Air Corp.,* 37 F.3d 1069, (5th Cir. 1994) ................................................ 4

*Lujan v. National Wildlife Fed'n*, 497 U.S. 871, (1990) ................................................ 4

*Mace v. City of Palestine*, 333 F.3d 621, (5th Cir. 2003). .......................................... 2,9

*Matsushita Elec. Indus Co. v. The Zenith Radio Corp.*, 475 U.S. 574, (1986)............................. 4

*McClendon v. City of Columbia*, 305 F.3d 314, (5th Cir. 2002) ................................... 5

*Meadours v. Ermel*, 483 F.3d 417, (5th Cir. 2007)................................................... 6

*Miller v. Graham, 447 F.App'x* 549, (5th Cir. 2011).................................................... 4

*Morgan v. Swanson, et. al.,* 659 F.3d 359, (5th Cir. Sept. 27th, 2011) ........................... 7

*Pearson v. Callahan*, 555 U.S. 223, 128 S.Ct. 1702 (2009)...................................... 5,6

*Pfannsteil v. City of Marion,* 918 F.2d 1178, (5th Cir. 1990)..................................... 6

*Pratt v. Harris Co*., 822 F.3d 174, (5th Cir.) 137 S.Ct. 1121 (2017) ........................... 6

*Ragas v. Tenneessee Gas Pipeline Co.*, 136 F.3d 455, (5th Cir. 1998)......................... 4

*Roberts v. City of Shreveport,* 397 F.3d 287, (5th Cir.  2005).................................... 5

*Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, (5th Cir.), 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d
    59 (1992) .............................................................................................. 4

*Sorenson v. Ferrie*, 134 F.2d 325, (5th Cir. 1998)................................................ 5,6

*Thompson v. Mercer*, 762 F.3d 433, (5th Cir.), 135 S.Ct. 1492 (2015)........................... 7

*Turner v. Houma Municipal Fire and Police Civil Service Board*, 229 F.3d 478, (5th Cir.  2000) 3

*Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, (5th Cir. 1988) ........................ 4

*Watkins v. New Castle County*, 374 F.Supp.2d 379, (2005)........................................ 9