**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KATHY DYER and ROBERT DYER, Individually and as Representative of the Estate of Graham Dyer,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:15-CV-02638-B** |
| | § | |
| **JACK FYALL, RICHARD HOUSTON, ALAN GAFFORD, ZACHARY SCOTT, WILLIAM HEIDELBERG, and BILL HEDGPETH,** | § | |
| | § | |
| **Defendants.** | § | |

---

**KATHY AND ROBERT DYER'S BRIEF IN SUPPORT**

---

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ **II**

**STATEMENT OF THE CASE** ........ **1**

**PROCEDURAL POSTURE** ........ **2**

**STANDARD OF REVIEW** ........ **3**

**ARGUMENT AND AUTHORITIES** ........ **3**

**A.THE DOCTRINE OF QUALIFIED IMMUNITY** ........ **3**

**B.FOURTH AMENDMENT** ........ **5**

**C.FOURTEENTH AMENDMENT** ........ **9**

**CONCLUSION AND PRAYER** ........ **14**

**CERTIFICATE OF SERVICE** ........ **15**

## TABLE OF AUTHORITIES

### CASES

*Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415 (5th Cir. 2017) ---------- 10, 12

*Anderson v. Creighton*, 483 U.S. 635 (1987) ---------------------------------------------------------- 4

*Anderson v. McCaleb,* 480 Fed.Appx. 768 (5th Cir. 2012) ------------------------------------------ 6

*Arthur Morris, et al. v. Dallas County, et al.*, 3:11-cv-00527-k, at *6 (N.D. Tex., Apr. 6, 2012) 10

*Bias v. Lundy,* 188 Fed.Appx. 248 (5th Cir. 2006)---------------------------------------------------- 7

*Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ----------------------------------- 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).------------------------------------------------------- 3

*Crisp v. Dutton*, 2015 WL 7076843, at *8 (W.D. Tex., Nov. 12, 2015) --------------------------- 11

*Cupit v. Jones*, 835 F.2d 82 (5th Cir. 1987)----------------------------------------------------------- 10

*Dominguez v. Correctional Medical Services*, 555 F.3d 543 (6th Cir. 2009) --------------------- 11

*Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752 (5th Cir. 2001) ------------------------ 11

*Estate of Carter v. City of Detroit*, 408 F.3d 304, 310 (6th Cir. 2005) ---------------------------- 11

*Estate of Henson v. Krajca*, 440 Fed.Appx. 341 (5th Cir. 2011)------------------------------- 11, 13

*Foelker v. Outagamie County*, 394 F.3d 510 (7th Cir. 2005)--------------------------------------- 11

*Gobert v. Caldwell,* 463 F.3d 339, 345 n. 12 (5th Cir.2006) ------------------------------------- 11

*Gonzalez v. Cecil County, Maryland*, 221 F.Supp.2d 611 (D. Md., June 4, 2002) --------------- 13

*Graham v. Connor*, 109 U.S. 386 (1989). ------------------------------------------------------------- 6

*Gresham v. Fischer*, 2015 WL 4068638, at *3 (W.D. Tex., July 1, 2015) -------------------------- 4

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc) ------------------- 10, 13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). ----------------------------------------------------------- 4

*Hernandez v. Mesa*, 137 S.Ct. 2003 (2017) ------------------------------------------------------------ 4

*Kelley v. County of Wayne*, 325 F.Supp.2d 788 (E.D. Mich., June 4, 2004).---------------------- 13

*Khansari v. City of Houston*, 14 F.Supp.3d 842 (S.D. Tex. 2014) ------------------------------------ 7

*King v. Chide*, 974 F.2d 653 (5th Cir. 1992). -------------------------------------------------------- 4

*Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015)------------------------------------------------- 12

*Lancaster v. Monroe County, Ala.*, 116 F.3d 1419 (11th Cir. 1997) ------------------------------- 12

*Lytle v. Bexar County, Texas*, 560 F.3d 404 (5th Cir. 2009)------------------------------------------ 5

*Massey v. Wharton,* 477 Fed.Appx. 256 (5th Cir. 2012) -------------------------------------------- 6

*Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005). ---------------------------------------------------- 12

*Mullenix v. Luna*, 136 S.Ct. 305 (2015)).------------------------------------------------------- 4, 7

*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012) ------------------------------------------------- 6

*Pearson v. Callahan*, 555 U.S. 223 (2009)---------------------------------------------------------- 4

*Shepherd v. Dallas County*, 591 F.3d 445 (5th Cir. 2009) ----------------------------------------- 10

*Sossamon v. Lone Star State of Tex.*, 560 F.3d 316 (5th Cir. 2009) ---------------------------------- 3

*Thomas v. City of Galveston*, 800 F.Supp.2d 826 (S.D. Tex. 2011) -------------------------------- 11

*Toney v. Owens*, 779 F.3d 330 (5th Cir. 2015) ------------------------------------------------------ 4

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004). ---------- 3

*Vaughn v. Gray*, 557 F.3d 904 (8th Cir. 2009) ------------------------------------------------------ 11

*Wernecke v. Garcia*, 591 F.3d 386 (5th Cir. 2009) ------------------------------------------------ 4

*Whitley v. Hanna,* 726 F.3d 631 (5th Cir. 2013).------------------------------------------------- 6

STATUTES

42 U.S.C. § 1983 ........................................................................................................ 12

TEX. PENAL CODE §46.01. ....................................................................................... 18

Texas Penal Code §46.01(13) ................................................................................... 14

Texas Penal Code §46.08 .......... 11, 14

OTHER AUTHORITIES

Christa Miller, *Cell Phone Bombs*, Officer.com (Dec. 13, 2006) .......... 16

Kathryn E. Scarborough & Craig Hemmens, *Section 1983 Suits Against Law Enforcement in the Circuit Courts of Appeal*, 21 JEFFERSON L. REV. 1, 11 (1999) .......... 13

Sarah Hughes Newman, *Proving Probable Cause: Allocating the Burden of Proof in False Arrest Claims under § 1983*, 73 U. CHICAGO L. REV. 347 (2006) .......... 13

NOW COME Kathy Dyer and Robert Dyer, Individually and as Representative of the Estate of Graham Dyer, and file this Brief in Support of their Response in Opposition to Defendants' Motion for Summary Judgment. For the same, Plaintiffs would state the following:

## STATEMENT OF THE CASE

The case before this honorable Court today exists, quite earnestly, because of a mother's intuition and her preternatural yearning to see beyond an inequitable, an untenable human narrative. It is a disconsolate cleaving of one's belief in the tenets of American democracy when a mother must discover, not through the cooperation of a government foundationally charged with protecting its citizenry, but through her own investigative grit and the intervention of the courts, the truth of her child's passing and the subhuman disregard for the sanctity of human life that accompanied him to his death. Thus, approximately four years since Graham Dyer's unnecessary passing, Kathy and Robert Dyer pray for justice from this Court, and would assert the following for its consideration:

> **Fourth Amendment**:  A genuine issue of material fact exists regarding causation of the fatal injuries suffered by Graham Dyer. Furthermore, the force used upon Graham Dyer by the Officer Defendants was blatantly excessive and a violation of his Fourth Amendment rights.
>
> **Fourteenth Amendment**:  A genuine issue of material fact exists regarding Plaintiffs' Fourteenth Amendment Medical Inattention claims against the Officer Defendants for failing to administer medical care to Graham Dyer.
>
> **Summary Judgment Evidence**:  Plaintiffs specifically and vehemently object to the Officer Defendants' introduction of any evidence outside of the depositions and other distinct items that were ordered in this Court's grant of very limited discovery on the issue of qualified immunity. It is extraordinarily inequitable to allow the Officer Defendants to introduce evidence that Plaintiffs have been barred from exploring and cross-examining, particularly the Officer Defendants' expert. However, to be safe and in response

> to the findings of such expert, Plaintiffs submit the Affidavit of Jerry State for the Court's consideration. Appx.291-299.

## PROCEDURAL POSTURE

Kathy and Robert Dyer originally filed the action *sub judice* in this Court on August 12, 2015, asserting causes of action pursuant to 42 U.S.C. § 1983 against, *inter alios*, defendants Jack Fyall ("Fyall"), Richard Houston ("Houston"), Alan Gafford ("Gafford"), Zachary Scott ("Scott"), William Heidelberg ("Heidelberg"), and Bill Hedgpeth ("Hedgpeth" and, collectively with Fyall, Houston, Gafford, and Heidelberg, the "Officer Defendants"). (Doc. 1).

On May 3, 2016, following a series of motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as relevant briefings in that regard, this Court dismissed Plaintiffs' claims in whole without prejudice, thus provisioning an opportunity to re-plead and cure any such identified deficiencies. (Doc. 45).

Bolstered by newly obtained information, which partially elucidated the theretofore-concealed circumstances of that fateful August night, Plaintiffs filed their First Amended Complaint on May 18, 2016. (Doc. 46). Predictably, Plaintiffs' Amended Complaint was greeted by a slew of motions to dismiss from the Officer Defendants, paramedic defendants Paul Polish and Joe Baker, and the City of Mesquite, culminating in this Court's dismissal of those claims against Polish, Baker, and the City of Mesquite on January 12, 2017. (Doc. 57).

However, in light of certain and suspect discrepancies surrounding the Officer Defendants' factual allegations, *inter alia*, this Court permitted Plaintiffs to conduct limited discovery with regard to the Officer Defendants' assertions of qualified immunity. (*Id.*; Doc. 66). However, this Court's grant of limited discovery has drawn back a curtain of subterfuge to reveal an incomprehensibly painful truth. In search of strident justice, Kathy and Robert Dyer now

submit to the honorable Court this Response in Opposition to Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is only appropriate where the pleadings and evidence show that no genuine issue of material fact exists, and that the movant, therefore, is entitled to judgment as a matter of law. *See Moss*, 610 F.3d at 922; FED. R. CIV. P. 56 (c). If the moving party meets the above burden, the non-moving party must then go beyond the pleadings to identify specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citation omitted).

Importantly, "a court's qualified immunity inquiry at the summary judgment stage requires that the court accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Wigenton v. Dixon*, 2017 WL 3701161, *3 (N.D. Tex., July 26, 2017) (Horan, J.) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)) (Godbey, J., adopting rec., Aug. 25, 2017); *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). Indeed, as the Fifth Circuit recently noted in *Anderson v. Valdez*, "even in the context of qualified immunity, the facts alleged must be taken in the light most favorable to the party asserting the injury." 845 F.3d 580, 600 (5th Cir. 2016).

## ARGUMENT AND AUTHORITIES

### A.
### THE DOCTRINE OF QUALIFIED IMMUNITY

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (2012). Traditionally, public servants are granted qualified immunity from suits unless their conduct violates clearly established federal law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015). In determining whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry addressed in an order left to the learned discretion of the court. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("Unnecessary litigation of constitutional issues also wastes the parties' resources."). Between the two prongs, the traditional first requires consideration of whether the conduct of the officers violated a constitutional right. *Gresham v. Fischer*, 2015 WL 4068638, at *3 (W.D. Tex., July 1, 2015) (citing *King v. Chide*, 974 F.2d 653, 657 (5th Cir. 1992)).

Once the plaintiff has shown a violation of a constitutional right, the court turns to the second inquiry, which is whether the relevant conduct violated clearly established federal law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015). In order to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Wernecke v. Garcia*, 591 F.3d 386, 392-93 (5th Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In conducting the qualified immunity analysis, courts "do not require a case directly on point." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015); *Hope v. Pelzer*, 536 U.S. 730 (2002).

Importantly, "[t]he dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Mesa*, 137 S.Ct. 2003, 2007 (2017) (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle v. Bexar County, Texas*, 560 F.3d 404 (5th Cir. 2009).

As discussed in detail, below and throughout, Plaintiffs Kathy and Robert Dyer contend that the Officer Defendants' mendacious efforts to conceal through intentional omission the events in Heidelberg's patrol vehicle, *inter alia*, plainly evidence their understanding that those actions were a blatantly unconstitutional and, frankly, morally bankrupt violation of Graham Dyer's Fourth Amendment right to be free from excessive force.

## B.
## FOURTH AMENDMENT

In determining the objective reasonableness of the force used by an officer upon a complainant, the traditional considerations of the court include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013); *see also Mendez v. Poitevent*, 823 F.3d 326, 331–32 (5th Cir. 2016). Ultimately, "the question is whether the totality of the circumstances justified that use of force." *Khansari v. City of Houston*, 14 F.Supp.3d 842, 853 (S.D. Tex., April 9, 2014) (quoting *Tennessee v. Garner*, 471 U.S. 1 (1985)); *see also Hanks v. Rogers*; 853 F.3d 738, 747 (5th Cir. 2017) ("[C]learly established law [in February 2013] demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing

verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance . . . ").

However, an officer need not act personally in the relevant use of excessive force in order to violate a plaintiff's constitutional right to be free therefrom. *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013). Indeed, an officer's failure to prevent another officer's use of excessive force will be found to be a violation of the victim's rights where: "(1) the bystanding officer knew that a fellow officer was violating an individual's constitutional rights, (2) had a reasonable opportunity to prevent violation, and (3) chose not to act." *Khansari v. City of Houston*, 14 F.Supp.3d 842, 853 (S.D. Tex., April 9, 2014) (citing *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013), *Hale v. Townley,* 45 F.3d 914, 919 (5th Cir.1995)). "Such liability is premised on the theory that by choosing not to intervene, a bystanding officer participates in his fellow officer's acts." *Id.*

In the Fifth Circuit, it has been clearly established since, at the very least, 2012 that the repeated and excessive Tasering of a detainee may be a violation of such detainee's constitutional right to be free from excessive force, particularly when the detainee does not present a threat of harm to the officers or others, is not actively resisting arrest, and/or displays indications that he or she is not mentally capable of understanding commands due to mental instability. *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012); *see also Anderson v. McCaleb,* 480 Fed.Appx. 768, 773 (5th Cir. 2012) (per curiam) (based on *Graham* factors, the officer "should have known that he could not continue to shock the suspect with the taser after he was no longer resisting arrest"); *Massey v. Wharton,* 477 Fed.Appx. 256, 263 (5th Cir. 2012) (per curiam) (where none of the *Graham* factors supported officer's using his Taser twice and

pepper spray once, "no reasonable officer would believe the force used . . . to be reasonable"); *Graham v. Connor*, 109 U.S. 386 (1989).

Pursuant to Plaintiffs' tireless research, there does not exist a case directly stating that it is unconstitutional to apply a Taser in drive-stun mode to the testicles of a non-threatening, secured detainee who is tripping on LSD to achieve "pain compliance," but, thankfully, the courts and the human conscience "do not require a case directly on point." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015); *Hope v. Pelzer*, 536 U.S. 730 (2002). In the context of the present case, it is indisputable that the Officer Defendants exercised excessive force during the arrest, detainment, and transport of Graham Dyer, and/or failed to prevent further use of excessive force.

As in *Khansari*, this Court's grant of limited discovery permitted Plaintiffs to "flesh out the remaining details of which officer or officers tasered [Graham] or wrongfully failed to prevent their fellow officers from tasering [Graham]." *Khansari v. City of Houston*, 14 F.Supp.3d 842, 861 (S.D. Tex. 2014) (citing *Bias v. Lundy,* 188 Fed.Appx. 248, 249–50 (5th Cir. 2006) (vacating judgment as a matter of law granting qualified immunity as to two officers who were alleged to have attacked the plaintiff)). Despite the officer's contentions that they did not know that Heidelberg relentlessly Tased Graham Dyer in drive-stun mode, the video evidence in this case quite plainly speaks not only the truth of the matter, but also the credibility and veracity of the those officer's factual accounts.

Furthermore, Plaintiffs contend that the escalation in force used upon their son was a direct result of the Officer Defendants' failure to utilize their crisis intervention training techniques when confronted with a subject who they knew to be suffering from a state of mental illness and/or mental or emotional instability. *See Khansari v. City of Houston*, 14 F.Supp.3d

842, 854 (S.D. Tex. 2014). Despite understanding from an extraordinarily incipient stage of their encounter with Graham Dyer that he was, in fact, suffering from the effects of a "bad trip" on LSD, (Appx. 62/12—19; Appx. 137/2—13), as Carpenter promptly informed them, the Defendant Officers failed to gauge their conduct accordingly so as to deescalate the situation in light of Graham's known mental instability.

Instead, the Defendant Officers conducted themselves in a manner that dangerously escalated a situation with a subject who they noted as not having control of his mental and physical faculties. In fact, instead of calmly answering the questions of a severely distressed young man suffering from the effects of a known hallucinogen, the Defendant Officers stridently ignored his outcries, placed him in handcuffs, sadistically Tasered him in multiple locations of his body, including his testicles (which Plaintiffs doggedly aver despite the duplicitous contentions of Officer Gafford to the contrary), and left him to die alone in a padded room at the Mesquite jail like a piece of human garbage, despite all of the Defendant Officers having knowledge of Graham's cranial injuries and serious medical needs, particularly Officers Gafford, Scott and Heidelberg.

The undue and baffling escalation in force by the Defendant Officers, particularly, again, Gafford, Heidelberg and Scott, was the driving factor and direct cause of Graham's escalation in self-harm (*e.g.*, bodily thrashing and head slamming), most notably during and after the incidents in Officer Heidelberg's car. While Graham screamed over and over again that he did not know what was happening, where he was, what was going on, etc., not a single Defendant Officer responded to Graham or tried to explain the circumstances of his detainment, except for when Heidelberg smirked and responded, "I don't know." When Graham continued to thrash about and slam his head inside of Heidelberg's patrol vehicle, indicating that previous attempts at

command compliance were not effective, Heidelberg, Scott and Gafford simply served up more of the same, which, critically and unsurprisingly, effectuated even more severe thrashing.

In a moment that should have provided clarity regarding the course of action the Defendant Officers should take going forward, Officer Houston made one attempt to interact with Graham using crisis intervention techniques, which sincerely calmed Graham to the point that he could answer Officer Houston with his name. This moment clearly should have indicated to the Officer Defendants that a different approach, involving crisis intervention techniques and calm negotiation, was warranted and necessary to ensure the safety of not only Graham Dyer, but the Defendant Officers, as well. Sadly and pertinently, however, only Officer Houston testified that he remembered anything from his crisis intervention training. Appx. 244/13—19; Appx. 114/19—23; Appx. 196/24—197/19. Despite having completed over 40 hours of crisis intervention trainings, Officer Fyall, in particular, could not remember any specifics. Appx. 228/19—231/17.

Thus, considering not only the extensive factual developments at this summary judgment stage but also the totality of the circumstances that August night, this Court should find that no reasonable officer could have believed that the force applied and actions taken by the Officer Defendants with regard to Graham Dyer, who weighed approximately 102 pounds and stood a mere 5’4”, were even remotely within the realm of being consistent with Graham’s constitutional right to be free from excessive force.

### C.
### FOURTEENTH AMENDMENT

As a threshold matter, Plaintiffs strongly believe that the City of Mesquite and the individual paramedic defendants Paul Polish and Joe Baker severely violated Graham Dyer’s Fourteenth Amendment rights when they deprived Graham of adequate medical attention,

particularly in light of newly acquired evidence in this action elucidating the acts and omissions of such actors that August night. Thus, with utmost respect to the findings of this Court during the incipient stages of this litigation, Plaintiffs intend to file relevant motions to reconsider the dismissal of the City of Mesquite, Paul Polish, and Joe Baker.

It is well-settled that "[p]retrial detainees are protected by the Due Process Clause of the Fourteenth Amendment," and "[w]hen the state deprives an individual of the freedom to act on his own behalf, the Fourteenth Amendment imposes on the state a duty to protect that individual." *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 419-20 (5th Cir. 2017) (citing *Cupit v. Jones*, 835 F.2d 82, 84-85 (5th Cir. 1987)). Importantly, "[b]oth pretrial detainees and convicted inmates are entitled to and may not be denied medical care." *Arthur Morris, et al. v. Dallas County, et al.*, 3:11-cv-00527-k, at *6 (N.D. Tex., Apr. 6, 2012) (Kinkeade, J.) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (a pretrial detainee may not be subjected to punishment prior to conviction).

For violation of these rights by a municipal defendant, the Fifth Circuit has determined that, pursuant to 42 U.S.C. § 1983, a pretrial detainee may bring claims "under two alternative theories: as an attack on a condition of confinement or as an episodic act or omission." *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth, Miss.*, 74, F.3d 633, 644-45 (5th Cir. 1996)). For violation of these rights by an individual defendant, a pretrial detainee may bring claims pursuant to a theory of deliberate indifference. *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 419-20 (5th Cir. 2017).

In order to support an allegation of deliberate indifference to a pretrial detainee's medical or basic human needs, the plaintiff must show that the officer had "knowledge of a substantial

risk of serious harm to the detainee and responded to that risk with deliberate indifference." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996); *Morris v. Dallas County*, 3:11-CV-0527-K, at *6 (N.D. Tex., April 6, 2012). Generally speaking, "deliberate indifference is shown when the official knows of and disregards an excessive risk to inmate health or safety, and the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cleveland v. Gautreaux*, 198 F.Supp.3d 717, 734 (M.D. La., Aug. 1, 2016) (citing *Estate of Henson v. Krajca*, 440 Fed.Appx. 341, 343 (5th Cir. 2011)).

To establish deliberate indifference to a detainee's medical needs, the plaintiff must show that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). The Fifth Circuit has defined a serious medical need as one "so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell,* 463 F.3d 339, 345 n. 12 (5th Cir. 2006). However, "in circumstances where the substantial risk of harm from denying medical attention would be obvious to any reasonable person, it can be inferred that the officers knew of that substantial risk." *Crisp v. Dutton*, 2015 WL 7076843, at *8 (W.D. Tex., Nov. 12, 2015) (quoting *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 840 (S.D. Tex. 2011)); *see*, *e.g.*, *Vaughn v. Gray*, 557 F.3d 904, 909 (8th Cir. 2009) ("Appellants' self-serving contention that they did not have the requisite knowledge does not provide an automatic bar to liability in light of the objective evidence to the contrary."); *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 550 (6th Cir. 2009) (holding nurse need only be shown to have known that "serious risks accompany heat-related illnesses and dehydration," not that plaintiff could become

quadriplegic as a result); *Estate of Carter v. City of Detroit*, 408 F.3d 304, 310, 312–13 (6th Cir. 2005) (defendant who knew plaintiff was exhibiting "the classic symptoms of a heart attack" and did not arrange transportation to a hospital could be found deliberately indifferent); *Foelker v. Outagamie County*, 394 F.3d 510, 513–14 (7th Cir. 2005) (jury could find that nurses who had observed the plaintiff's condition and the fact that he had defecated in his cell could be found to have known that he was going through drug withdrawal and to have done nothing about it, despite the claim of one defendant that he believed the plaintiff was "playing the system"); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997) ("a jail official who is aware of but ignores the dangers of acute alcohol withdrawal and waits for a manifest emergency before obtaining medical care is deliberately indifferent"); *Mata v. Saiz*, 427 F.3d 745, 756 (10th Cir. 2005).

Regardless of the underlying theory, in the wake of the Supreme Court's decision in *Kingsley v. Hendrickson*, the requirement that a detainee show a subjective intent appears to be called into question, as the appropriate inquiry for a detainee's Section 1983 claims is "*solely an objective one*." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015) (emphasis added); *see also Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 424 (5th Cir. 2017) (Graves, J., concurring) (asserting that "the analysis in *Kingsley* appears to support the conclusion that an objective standard would apply in a failure-to-protect case," as well). In rejecting a subjective standard for § 1983 claims, the *Kingsley* Court stated:

> *Bell*'s focus on 'punishment' does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated. Rather, as *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that the challenged government action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.

*Id*. at 2473-74 (emphasis added); *see also Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) ("On balance, we are persuaded that *Kingsley* applies, as well, to failure-to-protect claims brought by pre-trail detainees against individual defendants under the Fourteenth Amendment.").

As an initial matter, a pretrial detainee's right to medical care "was clearly established law at the time of the incident in question." *Estate of Henson v. Krajca*, 440 Fed.Appx. 341, 343 (5th Cir. 2011); *see also Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996). In addition, many courts have noted the serious medical needs that accompany drug withdrawals and overdoses. *Gonzalez v. Cecil County, Maryland*, 221 F.Supp.2d 611, 616 (D. Md., June 4, 2002); *Kelley v. County of Wayne*, 325 F.Supp.2d 788, 791 (E.D. Mich., June 4, 2004). In the context of the present case, it is indisputable that the Officer Defendants knew that Graham Dyer needed immediate medical attention for a plainly serious medical condition, as each officer admitted in his deposition testimony, and they were deliberately indifferent to that serious medical need when they failed to reasonably acquire for Graham, a pre-trial detainee, proper medical attention, which resulted in his untimely death. No reasonable officer nor reasonable *human* could have viewed the degraded, sweat-soaked, injured and bloodied state of Graham Dyer that August night and believed that his inaction with regard to obtaining proper medical attention for Graham, especially following the events inside of Heidelberg's patrol vehicle, was consistent with Graham Dyer's constitutional right as an American citizen and fellow Texan to receive attention for a serious medical need. Indeed, if "the essential objective of pretrial confinement is to ensure the detainees' presence at trial," it should therefore follow that keeping such detainee alive for trial is a paramount consideration of pretrial confinement. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Kathy Dyer and Robert Dyer, Individually and as Representative of the Estate of Graham Dyer, ask that this honorable Court deny Defendants' Motion for Summary Judgment, and for all other and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/Susan E. Hutchison
SUSAN E. HUTCHISON
Texas Bar No. 10354100
sehservice@hsjustice.com

CHRISTOPHER E. STOY
Texas Bar No. 24075125
cstoy@hsjustice.com

J. ROBERT HUDSON, JR.
Texas Bar No. 24094736
jr@hsjustice.com

HUTCHISON & STOY, PLLC
505 Pecan St., Ste. 101
Fort Worth, Texas 76102
T: (817) 820-0100
F: (817) 820-0111

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This is to certify that on this 26th day of October 2017, a true and correct copy of the above and foregoing document was served on the following attorneys of record via the Court's electronic service and/or first class, regular mail:

Joe C. Tooley
510 Turtle Cove, Suite 112
Rockwall, Texas 75087
(972) 722-1058
(972) 722-1070 (Fax)
Joe@TooleyLaw.com

/s/Susan E. Hutchison
SUSAN E. HUTCHISON